CHICKASHA COTTON OIL COMPANY, a Delaware corporation, et al., Appellants,

v.

The TOWN OF MAYSVILLE, OKLAHOMA, a municipal corporation, et al., Appellees.

No. 5603.

United States Court of Appeals Tenth Circuit.

Oct. 31, 1957.

------◆------

Joe W. Curtis, Pauls Valley, Okl. (Clarence McElroy, Chickasha, Okl., and Nathan Scarritt, Enid, Okl., were with him on the brief), for appellants.

W. R. Wallace, Jr., Oklahoma City, Okl. (Howard C. Johnson, Oklahoma City, Okl., was with him on the brief), for appellee, Town of Maysville, Oklahoma.

Before BRATTON, Chief Judge, and HUXMAN and BREITENSTEIN, Circuit Judges.

BRATTON, Chief Judge.

The Town of Maysville, Oklahoma, instituted this action against Chickasha Cotton Oil Company and various other defendants to determine ownership of the mineral rights in and under the right-of-way of Atchison, Topeka, and Santa Fe Railway Company within the limits of the Town of Maysville. The land involved was originally a portion of the tribal lands of the Choctaw and Chickasaw Nations, members of the Five Civilized Tribes of Indians. The defendants fell generally into different categories which included the Choctaw and Chickasaw Nations, the original allottees who were still living, all of the owners of lots abutting upon the right-of-way, the railway company, oil and gas lessees, and purchasers of oil being produced from drilling units in which the right-of-way was located. Plaintiff asserted title acquired from the Choctaw and Chickasaw Nations under and by virtue of section 14 of the Act approved April 26, 1906, 34 Stat. 137, 142. In the main, the defendants asserted title or rights as allottees or successors in interest of allottees of land abutting upon the right-of-way.

The cause was submitted to the court upon stipulated facts. These facts were stipulated. In 1901, Kiowa, Chickasha and Fort Smith Railway Company acquired a railroad right-of-way crossing among other lands certain portions of land subsequently allotted to four Indians, Jennie L. Williams, Clarence Mays, Willie Mays, and David Mays; and a schedule of damages was filed and approved. At the time of the acquisition of the right-of-way, the land from which the right-of-way was carved was still part of the common domain of the tribes but it had been surveyed and sectionalized. The defendant Atchison, Topeka and Santa Fe Railway Company succeeded to the rights of Kiowa, Chickasha and Fort Smith Railway Company to the right-of-way and is operating a railroad thereon; but neither company ever exercised any right to purchase title to the land constituting the right-of-way. In 1903, a certificate of allotment was issued to Jennie L. Williams, a Chickasaw Indian of the 1/32 degree blood; and in 1904, restrictions were removed from the land. In 1903, a certificate of allotment was issued to Clarence Mays, a Chickasaw of the 1/32 degree blood. In 1905, a like certificate was issued to Willie Mays, a Chickasaw of the 1/32 degree blood; and in 1905, restrictions were removed from the land. Patents were issued to the allottees in 1906, 1905, and 1906, respectively. Each certificate and patent described the land by legal subdivision, less the amount in specified acreage embraced within the right-of-way strip. In January, 1906, a petition was filed in the United States Court for the Southern District of Indian Territory styled "In the Matter of the Incorporation of Maysville"; and in February, a purported order was entered in such matter purporting to incorporate the town. Neither the order nor the journal entry of the court where the same appears to be recorded was ever

signed by the trial judge. In July, 1906, Jennie L. Williams, joined by her husband, platted a portion of the land allotted to her and dedicated it as the Town of Maysville; and in March, 1907, Willie Mays, joined by his wife, and Susan E. Mays, joined by her husband, platted a portion of the land allotted to him and dedicated it as Mays addition to Maysville.

The court determined generally as a matter of law that plaintiff, Town of Maysville, was the owner of the minerals in and under the right-of-way within the limits of such municipality; and predicated upon such legal basis, the court entered judgment determining the rights of the parties, respectively. Various defendants joined in perfecting an appeal from such judgment.

■■■■ Error is predicated upon the action of the trial court in determining as a matter of law that the Town of Maysville was the owner of the mineral estate in and under the land constituting the right-of-way within the municipality and in entering judgment accordingly. The argument in support of the assignment of error is that the title to the right-of-way vested by allotment in the allottees of the land out of which the right-of-way was carved, subject only to the easement of the railroad company and its option to purchase the fee; and that upon the failure of the railway company to purchase title to the strip constituting the right-of-way within the permitted time, title to land and the mineral estate therein vested in the owners of the land abutting the right-of-way, subject only to the easement for right-of-way purposes. It is the general common law rule—recognized by this court —that the servient estate in a strip of land set apart for railroad right-of-way, highway, or other comparable public purpose, passes with a conveyance of the fee to the abutting legal subdivision or tract out of which the right-of-way or other strip was carved even though no express provision to that effect is contained in the conveyance; and that on the abandonment of the strip for the purpose for which it was set apart, the dominant estate becomes extinguished and the entire title and estate vests in the owner of such abutting legal subdivision or tract. United States v. Magnolia Petroleum Co., 10 Cir., 110 F.2d 212; United States v. Drumb, 10 Cir., 152 F.2d 821; Seminole Nation v. White, 10 Cir., 224 F.2d 173, certiorari denied 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787. But none of those cases involved land formerly belonging to the Chocktaw and Chickasaw tribes and later used as a railroad right-of-way through a city or town. In the first case, the railroad company merely filed a map of location designating a strip to constitute the right-of-way. The company did not pay any compensation or damages, did not take any other steps toward the acquisition of the right-of-way, and did not construct the railroad. In the second case, the land involved consisted of two city blocks which had been at one time set aside for railroad station, siding, and yard purposes within the municipality. The railroad company obtained a right-of-way through the municipality but never used the tract in question in connection with its business operations. It quitclaimed various parts thereof to individuals, corporations, and the city in consideration for deeds to other tracts on the opposite side of the railroad, deemed to be more suitable for railroad purposes. And in the third case, the strip constituting the right-of-way was not located within a municipality. Differing from those cases, this action involves land formerly a part of the domain of the Choctaw and Chickasaw tribes and later used as a railroad right-of-way within a municipality; and for the reasons hereinafter outlined, it does not fall within the purview of the general common law rule of reverter to which reference has been made.

Section 13 of the Act approved February 28, 1902, 32 Stat. 43, 47, expressly granted to any railway company organized under the laws of the United States, or of any state or territory, which should comply with the act, the right to locate,

construct, operate, use, and maintain a railway into or through the Indian Territory, together with the right to take land for right-of-way and other specified purposes, in or through lands held by any Indian tribe, or in or through any lands in such Territory which had been or was thereafter allotted in severalty to any individual Indian. The Act approved July 1, 1902, 32 Stat. 641, ratified an agreement entered into between the United States and the Choctaw and Chickasaw tribes, sometimes referred to as the Supplemental Agreement. The agreement and the act of ratification provided the procedure by which the tribal lands of the two tribes were to be allotted in severalty to members of such tribes. Section 26(b) of the act provided in presently pertinent part that all lands to which at the date of the final ratification of the agreement any railroad company had a vested right for right-of-way under any treaty or Act of Congress should be reserved from allotment. The act approved April 26, 1906, supra, was entitled "An Act To provide for the final disposition of the affairs of the Five Civilized Tribes in the Indian Territory, and for other purposes." It was a comprehensive act and made meticulous provision for winding up the affairs of the tribes. Section 14 thereof concerned itself with disposition of land reserved from allotment, including reversionary interest in land reserved for railroad right-of-way purposes. Under the section land reserved from allotment for the use or benefit of any person was to be conveyed to such person; provided that if any tract or parcel so reserved should before conveyance thereof be abandoned for the use for which it was reserved, it should revert to the tribe. But the section further provided that it should not apply to land reserved from allotment because of the right-of-way of a railroad or railway company. It further provided that a railroad or railway company should have the right to acquire by purchase a strip of land used for right-of-way purposes at a valuation to be determined by the Secretary of the Interior. And it further provided that in the event such a railroad or railway company should fail to make payment within the time prescribed by regulation or should cease to use such strip for the purpose for which it was reserved, title thereto should vest in the owner of the legal subdivision of which the strip was a part, except that title to lands within a municipality should upon abandonment vest in such municipality. Under date of June 12, 1908, the Secretary of the Interior, acting through the Commissioner of Indian Affairs, promulgated a regulation governing the acquirement of title by railroad or railway companies occupying land in the former Indian Territory for depots, station grounds, water stations, stock yards, or other uses connected with the maintenance or operation of railroad or railway companies. Making specific reference to section 14 of the Act approved April 26, 1906, supra, the Secretary designated November 1, 1908, as the date prior to which any railroad or railway company holding title in the nature of an easement to lands in that part of the State of Oklahoma formerly known as the Indian Territory for rights-of-way, depots, station grounds, water stations, stock yards, or other uses connected with the maintenance and operation of such railroad might acquire title to such land. And the regulation provided that in the event "any railroad or railway company fails to purchase the land upon which it holds an easement prior to that date, title will vest in the owner of the legal subdivision of which the land so abandoned is a part, except where lands are within a municipality when title will vest in such municipality." At the request of the railway company, the time within which the right to purchase the right-of-way of which the strip in question constituted a part was extended to June 30, 1909; but the company did not exercise its right to purchase the fee at any time. These several statutory provisions and the regulation promulgated by the Secretary of the Interior must be considered

546

together as integrated parts of the whole. And when considered in that manner, it seems clear that the railway company had the right to acquire the easement for a right-of-way; that upon acquiring the easement the land was reserved from allotment; that the railway company also had the right to acquire by purchase the title in fee to the land constituting the strip; that such right of purchase expired on June 30, 1909; that failure to exercise such right constituted abandonment of the title in fee; and that upon such abandonment, title to the land constituting the right-of-way and the mineral estate therein, within the Town of Maysville, by operation of the applicable and effective provision contained in the concluding portion of section 14, supra, vested in the town, subject to the easement for right-of-way purposes.

The judgment is affirmed.