**KANSAS CITY SOUTHERN RAILWAY COMPANY, a corporation, Plaintiff,**

v.

**ARKANSAS LOUISIANA GAS COMPANY, a corporation, Defendant.**

**FORT SMITH AND VAN BUREN RAILWAY COMPANY, a corporation, Plaintiff,**

v.

**ARKANSAS LOUISIANA GAS COMPANY, a corporation, Defendant.**

**Nos. C-71-33, C-71-34.**

United States District Court, E. D. Oklahoma, Civil Division.

March 16, 1972.

Gordon Watts, Burton Johnson, Oklahoma City, Okl., for plaintiffs.

G. C. Mayhue, Jr., Ada, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

In these consolidated cases the Plaintiff Railway Companies seek damages against the Defendant Gas Company as a result of Defendant crossing their railway right-of-way easements with gas pipelines at fourteen (14) separate locations in this judicial district. The pipeline crossings had been completed before this litigation was commenced. It appears that the parties were unable to agree with reference to compensation for the pipeline crossings. The crossings were physically accomplished by the Defendant through the benefit of State condemnation proceedings it brought which gave Defendant orders of possession which enabled it to make the crossings. Estimated compensation deposited by the Defendant in said condemnation proceedings was not withdrawn by the Plaintiffs and apparently when the pipeline crossings were completed the State condemnation proceedings were dismissed by the Defendant and the deposits recovered.

The first issue presented for determination herein is whether the Defendant had the right to cross Plaintiffs' railroad right-of-way easements. The Court finds and concludes under the evidence in this case that Defendant had such right in all fourteen (14) instances. Property owned by or devoted to the use of a railroad is subject to appropriation for another public use which is not inconsistent with the use of the railroad and does not tend to deprive the railroad of free enjoyment of its franchise and operation thereunder. 29A C. J. S. Emi-

nent Domain § 80; 26 Am.Jur.2d, Eminent Domain, § 89.[1] The evidence discloses that the pipeline crossings are not inconsistent with the Plaintiffs' railroad operations nor do they tend to deprive the railroads of the free enjoyment of their franchises and railroad operations. The evidence discloses that the manner of effecting the pipeline crossing of a railroad right-of-way easement is to dig an open ditch to the railroad right-of-way at which point a different machine is used which bores a tunnel beneath the railroad right-of-way and then the open ditching operation is renewed at the far side of the railroad right-of-way easement. This type of operation was utilized in twelve of the fourteen crossings. In the other two crossings which involved larger pipelines it was necessary for the pipeline constructors to dig an open ditch across the railroad right-of-way and back fill the same but the use of the railroad track and bed itself was not blocked or put out of operation. Therefore, under the evidence the Court finds that the pipeline crossings did not block or deprive the railroads of their use of their right-of-way easements for railroad purposes, and that the Defendant was legally entitled to accomplish such crossings.[2]

The next issue presented has to do with the Defendant paying for its fourteen (14) pipeline crossings. The Plaintiffs do not own the land involved in fee simple. They own only right-of-way easements. The predecessor of Plaintiff Kansas City Southern Railway Company was authorized by an Act of Congress of February 25, 1893 (27 Stat. 487) to construct and operate a railroad through Indian Territory which Act contains the following language:

"Sec. 2. That said corporation is authorized to take for all uses of a railroad, telegraph, and telephone line, and for no other purposes, a right of way one hundred feet in width through said Indian Territory * * *. And provided further, That no parts of the lands herein authorized to be taken shall be leased or sold by the company, and shall not be used except in such manner and for such purposes only as shall be necessary for the construction and convenient operation of said railroad, telegraph and telephone line, * * *".

The predecessor of the Plaintiff Fort Smith and Van Buren Railway Company was authorized by an Act of Congress of March 3, 1899 (30 Stat. 1368) to construct and operate a railroad through Indian Territory which Act contains the following language:

"Sec. 2. That said corporation is authorized to take and use for all purposes of a railway and telegraph and telephone line, and for no other purpose, a right of way one hundred feet in width through the said Choctaw and Creek nations . . . Provided further, That no part of the lands herein authorized to be taken shall be leased or sold by the company, and

---

[1] 29A C.J.S. Eminent Domain § 80 states:
"In general, all property owned by, or devoted to the use of, a railroad is subject to appropriation for another public use. If the second appropriation is inconsistent with the first and tends to deprive the railroad company of the free enjoyment of its franchise, a general authority to condemn is insufficient, and authority must be granted in express terms or by necessary implication, except perhaps in cases where a public exigency requires such appropriation."
27 Am.Jur.2d, Eminent Domain, § 89 states:
". . . . A portion of a tract taken for a public use, but which is not essential to such use and which may be devoted to a different public use without seriously infringing upon the enjoyment of the first use, may be taken for the second use under general authority."

[2] If public service type companies possessing the power of eminent domain were not so required to share their property it would of course be impossible to move natural gas from western Oklahoma and the panhandles of Texas and Oklahoma to the eastern part of the country by reason of the railroad lines of the Santa Fe Railroad Company extending from Chicago to the Gulf Coast.

they shall not be used except in such manner and for such purposes only as shall be necessary for the construction and convenient operation of said railroad, telegraph and telephone lines, and when any portion thereof shall cease to be so used, such portion shall revert to the Choctaw Nation or Creek Nation."

 By further and later legislation it was provided that fee simple title to the land under the right-of-way easements here involved could have been purchased by the Plaintiff Railway Companies under rules and regulations to be prescribed by the Secretary of Interior at a valuation determined by him; but if any railway company should fail to make payment within the prescribed time [3] title to the land shall thereupon vest in the owner of the legal subdivision of which the land was a part, except that title to lands within a municipality shall thereupon vest in such municipality.[4] The Plaintiff Railway Companies did not avail themselves of this opportunity. Thus, it appears that the Plaintiff Railway Companies own only right-of-way easements which can be used only for railroad, telegraph and telephone lines purposes and that the railway Plaintiffs were and are not authorized to lease or sell the right-of-way easements so acquired. The title to the lands on which the right-of-way easements are situated was vested in 1909 in the adjacent owners and municipalities. Thus, we have the Plaintiff Railway Companies owning dominant estates in the nature of right-of-way easements for stipulated purposes only and the adjacent land owners and municipal corporations involved owning the land burdened as servient estates with railway right-of-way easements with reverter rights to the right-of-way easements upon cessation of railway operations. Chickasha Cotton Oil Co. v. Town of Maysville, Okl., 249 F.2d 542 (Tenth Cir. 1957).[5]

 The Defendant has paid the servient estate owners for the right to cross under the Plaintiffs right-of-way easements.[6] In these circumstances the Defendant was not required to condemn

---

3. The prescribed time expired on June 30, 1909.

4. Section 14 of the Act of April 26, 1906, 34 Stat. 137 reads as follows:
 "Sec. 14. That the lands in the Choctaw, Chickasaw, Cherokee, Creek and Seminole nations reserved from allotment or sale under any Act of Congress for the use or benefit of any person, corporation, or organization shall be conveyed to the person, corporation, or organization entitled thereto: * * * Provided further, That this section shall not apply to land reserved from allotment because of the right of any railroad or railway company therein in the nature of an easement for right of way, depot, station grounds, water stations, stock yards or other uses connected with the maintenance and operation of such company's railroad, title to which tracts may be acquired by the railroad or railway company under rules and regulations to be prescribed by the Secretary of the Interior at a valuation to be determined by him; but if any such company shall fail to make payment within the time prescribed by the regulations or shall cease to use such land for the purpose for which it was reserved, title thereto shall thereupon vest in the owner of the legal subdivision of which the land so abandoned is a part, except lands within a municipality the title to which, upon abandonment, shall vest in such municipality."

5. In this case our Circuit held that railway companies in failing to exercise their purchase rights under 34 Stat. 137, *supra* abandoned title in fee and that upon such abandonment title to the land constituting the right-of-way easements and the mineral estate vested in the municipality involved (the adjacent owner) subject to the easement for railway right-of-way purposes. Thus, the adjacent or servient estate owners in our case own the land on which the railway right-of-way easements are situated and it is they who are entitled to the "just compensation" for the pipeline crossings.

6. It developed at the trial that this is so except it was then brought to the Court's attention for the first time that at one of the crossings the servient estate was owned by one of the railway companies and it had not been paid for the right to cross its right-of-way at that point. This problem was not an issue developed in this litigation and the Court declined

the right-of-way easements owned by the Plaintiffs nor were the Plaintiffs entitled to the "just compensation" for the takings. By settling with and paying the servient estate owners who owned the land subject to the railway right-of-way easements the Defendant acquired the right to cross under the railroad right-of-way easements subject however to Defendant's liability for any damages suffered by Plaintiffs resulting from Defendant laying its pipelines under their right-of-way easements.[7] This is to say that if the pipeline crossings temporarily blocked or interrupted the Plaintiff Railway Companies in their operations the Defendant would be liable in damages for any losses so suffered by the Plaintiffs. However, the evidence did not disclose any such blocking or interrupting of railway operations. As to any physical damage to the surface of the lands on which the right-of-way easements are situated, the evidence disclosed no such damage except for one depression in the area of a pipeline crossing which depression has now been filled in by the Defendant. In any event, the Court would hold that such depression was only de minimis and not subject to the recovery of damages therefor. The Plaintiff Railway Companies have complained of damages suffered now and in the future as a result of increased inspection efforts on their part by reason of the pipeline crossings. The Court finds this claim to be without merit as under the law the Plaintiff Railway Companies and the Defendant Gas Company have their own inspection responsibilities for their respective lines or operations and that no damage or only de minimis damage results under these circumstances to Plaintiffs. Plaintiffs

have further claimed that by virtue of the pipeline crossings of their right-of-way easements they were required to immediately effect changes to three sets of the maps from which they work and operate their railroads. The Court finds this expense to which the Plaintiffs have been put to be a recoverable item of damage under 23 Okl.St.Ann. § 61, as it is believed that such expense is a detriment to Plaintiffs proximately caused by the Defendant in crossing their right-of-way easements with a pipeline. As to this item the parties have stipulated and agreed that the monetary damage caused to Plaintiffs by virtue of such mapping expense was $50.00 per pipeline crossing for a total of $700.00 in monetary outlay. The Court finds that the Plaintiffs are entitled to recover this amount from the Defendant, the exact amount for each Plaintiff depending upon the number of its pipeline crossings.

■ Lastly, Plaintiffs claim that the Defendant is estopped or has waived its right to condemn portions of the railway Plaintiffs' right-of-way easements. In the first place, the Defendant is not required to condemn the railway right-of-way easements. Any condemnation, if necessary, would be against the owners of the servient estates. From the evidence, the Court is aware of no conduct on the part of the Defendant which would constitute either an estoppel or waiver as claimed by Plaintiffs. To the contrary, the Defendant has asserted from the beginning its right to cross the railway lines and has correctly taken the position that payments for such crossings are only to be made to the servient estate owners and not to the railway

---

to entertain the same leaving the parties to settle this matter either by agreement or a reverse condemnation proceeding.

7. The Court bases this liability of Defendant on 23 Okl.St.Ann. § 61 which reads:
 "§ 61. Obligation not arising from contract
 For the breach of an obligation not arising from contract, the measure of damages, except where otherwise ex-

pressly provided by this chapter, is the amount which will compensate for all detriment proximately caused thereby, whether it could have been anticipated or not."

It is believed in the circumstances of this case that Defendant in effecting the pipeline crossings had an obligation not to damage Plaintiffs' operations, use and enjoyment of their right-of-way easements.

Plaintiffs as they own only right-of-way easements and these they cannot lease or sell. The Court agrees with this position, and further concludes that the Plaintiffs have not established by their evidence either estoppel or waiver against the Defendant.

Thus, the issues herein are decided generally in favor of the Defendant with the Plaintiffs being entitled to judgments against the Defendant in the amount of $50.00 for each pipeline crossing of its right-of-way easements as a result of necessary map work vital to its operation.