**ENERGY TRANSPORTATION SYSTEMS, INC., a Delaware Corporation, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, a Utah Corporation, Defendant.**

No. C76–129B.

United States District Court,
D. Wyoming.

Aug. 11, 1977.

Henry A. Burgess, Burgess & Davis, Sheridan, Wyo., appearing as counsel for plaintiff.

Frederick G. Loomis, Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo., and Harold F. Coray, Omaha, Neb., appearing as counsel for defendant.

## MEMORANDUM OPINION

BRIMMER, District Judge.

This controversy involves conflicting claims of ownership to the subsurface of lands subject to a railroad right of way granted pursuant to the Act of July 1, 1862, 12 Stat. 489, as amended by the Act of July 2, 1864, 13 Stat. 356, which are sometimes referred to as the Pacific Railroad Acts. Both parties have acknowledged that the facts are undisputed and both parties have moved for summary judgment. The Court finds that there are no genuine issues as to any material fact. Jurisdiction is claimed both on the basis of diversity (28 U.S.C. Section 1332) and under 28 U.S.C. Section 1331(a) as a case arising under the laws of the United States. Plaintiff is a Delaware corporation with its principal place of business in California. Defendant is a Utah corporation with its principal place of business in Nebraska. The matter in controversy exceeds in value the amount of $10,-000.00 exclusive of interests and costs. Plaintiff's cause of action arises in Wyoming and both parties do business in Wyoming. The Court concludes that it has diversity jurisdiction, as well as jurisdiction on the basis of a federal question because of this being a controversy respecting construction of federal acts and the nature of the estate granted to defendant by them. *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974).

The United States acting under the authority granted by the Act of July 1, 1862, supra, granted to a predecessor of the Defendant, Union Pacific Railroad Company, a 400 foot right of way over the North half of Section 2, Township 14 North, Range 64 West of the Sixth Principal Meridian in Laramie County, Wyoming. The Defendant has constructed its main trans-continental railroad through Wyoming over this right of way, traversing the half section in an east-west direction.

The Plaintiff, Energy Transportation System, Inc. (ETSI), proposes to build an underground pipeline to transport finely ground coal in a water slurry from the coal fields of the Powder River Basin in Wyoming to Arkansas.

ETSI acquired various rights of way, well fields and water rights to help in the designing, planning and developing of the slurry pipeline. One of these rights of way was obtained from Wayne and Vera Nicodemus, the owners of a tract of land in the North half of Section 2, Township 14 North, Range 64 West of the Sixth Principal Meridian in Laramie County, Wyoming. The Nicodemuses are the successors in interest (through several intervening conveyances) to Maggie Majors, who acquired the original patent to the land in question on March 29, 1913, pursuant to the Homestead Act of May 20, 1862, 12 Stat. 392, and amendments thereto, 43 U.S.C. Section 161 et seq. The homestead patented to Majors and now owned by the Nicodemuses embraces and straddles the land over which the Defendant's railroad right of way passes. The patent conveyed the entire North half of Section Two, subject only to vested and accrued water rights for mining, agriculture, manufacturing or other purposes, but without any exceptions or reservations other than the usual reservation for ditches or

canals constructed by authority of the United States. The patent did not exclude or even make any mention of the railroad right of way from the grant. The right of way for the underground slurry pipeline given ETSI by the Nicodemuses must cross beneath the Defendant's railroad right of way. The Defendant has consented to placement of other pipelines under other portions of its 400 foot right of way in accordance with Defendant's standard specifications for such construction, with which the Plaintiff has the technological capability of complying, and said pipelines do not interfere with the railroad operations.

The Plaintiff brought this action seeking a declaratory judgment which would establish its right to build a slurry pipeline beneath Defendant's right of way by declaring that the right of way obtained under the Act of July 1, 1862 is in the nature of an easement entitling it to use the land within its right of way for construction and operation of a railroad, but not entitling the Defendant to exclude the Plaintiff, as successor in interest to the original patentee from construction and operation of a coal slurry pipeline in the subsurface strata below the land surface. The Plaintiff also sought to restrain the Defendant from interfering with the Plaintiff's use of the subsurface. The Defendant denied that ETSI or Maggie Majors or Wayne and Vera Nicodemus ever obtained any interest in the subsurface beneath the railroad right of way and asserted that the Defendant is actually the owner of a type of fee title to the right of way which is sufficient to justify the railroad's refusal of Plaintiff's claim to ownership of a right to cross it.

The two issues that must be determined by this Court are, first, the extent of the interest granted the Defendant by the railroad right of way Act of July 1, 1862, supra, and second, the extent of the interest given to ETSI by way of the Homestead Act of 1862, supra. The Defendant contends that the railroad has, under the right of way Act of July 1, 1862, been given a limited fee subject only to a reversion in the United States. The Plaintiff asserts that the Defendant was only given an easement to the

surface and that the servient estate was not separated from the public domain when the railroad was given its right of way. It is therefore the position of the Plaintiff that servient estate passed to the homestead patentee.

The 1862 Act granted to the railroad a "right of way . . . for the construction of said railroad and telegraph line . . . .", Section 2, 12 Stat. 491. The right of way was 200 feet in width on each side of the railroad, and included the right to take from the public lands adjacent to the "line of said road, earth, stone, timber and other materials for the construction thereof" and also included "all necessary grounds for stations, buildings, workshops and depots, machine shops, switches, side tracks, turntables, and water stations." Ibid. "All mineral land," except where the same contained timber, was excepted from the Act, Section 3, Ibid. These grants were made on certain conditions, such as payment of bonds at maturity. The Courts have also held that the grants were made on an implied condition of reversion if the grantee ceased to use the premises for railroad purposes. An amendment in 1864 granted the railroad the right "to enter upon, purchase, take and hold any lands or premises that may be necessary and proper for the construction and working of said road," and further stated that "mineral land" shall not be construed to include coal and iron land. 13 Stat. 357–358.

The question is one of first impression. This Court's attention has not been directed to any decision which determined the right to use the *non-mineral* subsurface beneath a railroad right of way granted by Congress pursuant to the right of way Act of 1862, supra. However, several court decisions have discussed the nature of the right given under various railroad right of way statutes. Thus, in *Northern Pacific Railway Co. v. Townsend*, 190 U.S. 267, 271, 23 S.Ct. 671, 47 L.Ed. 1044 (1903), the Supreme Court said that a right of way given under the 1862 Act was a "limited fee" made on an implied condition of reverter to the government. The Townsend case held that

a surface owner's attempt to claim an adverse possession title to a portion of a railroad's right of way must fail because of Congressional intent that title to the right of way should continue in the original grantee, its successor and assigns.

Nearly 40 years later in *Great Northern Railway Co. v. United States*, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942), the Supreme Court again had occasion to discuss the nature of a railroad's grant of right of way, holding that a right of way granted under the Act of March 3, 1875, 18 Stat. 482, 43 U.S.C. Section 934, was an easement and *not a fee*, so that the railroad had acquired no interest in the minerals underlying the right of way. The 1875 Act and the 1862 Act are indeed very similar in nearly all important respects, but this Great Northern decision, however, did not overrule the Townsend decision. The Court pointed out the legislature policy changes that had occurred after 1871 which are responsible for a different construction of the respective rights granted under the 1862 and 1875 rights of way statutes.

The case of *United States v. Union Pacific Railroad Co.*, 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957) was brought by the government to prevent the railroad from drilling for oil and gas on the right of way granted Union Pacific by the 1862 Act. The railroad relied on the limited fee doctrine of Townsend to establish its rights to the minerals. In holding that the 1862 Act reserved the minerals to the United States Justice Douglas stated,

"We would have to forget history and read legislation with a jaundiced eye to hold that when Congress granted only a right of way and reserved all 'mineral lands' it nonetheless endowed the railroad with the untold riches underlying the right of way. Such a construction would run counter to the established rule that land grants are construed favorably to the Government, that nothing passes except what is conveyed in clear language . . ."

The majority opinion goes on to say:

"*The most that the 'limited fee' cases decided was that the railroads received all surface rights to the right of way and all rights incident to a use for railroad purposes.*"

Defendant here urges that the surface rights granted Union Pacific in Townsend by way of the 1862 Act are superior to the surface rights conveyed by the 1875 Act, but it is now apparent from the clear holding in *United States v. Union Pacific*, supra, that the servient estate did not pass to the railroad but instead remained with the United States.

The Tenth Circuit in *Wyoming v. Udall*, 379 F.2d 635, 640 (CA 10 1967) has come to a similar conclusion in another controversy involving minerals beneath the right of way granted under the Act of 1862. Although the railroad was not a principal party in that case the Court found that the United States had title to the servient mineral estate. In that same opinion the Court made this succinct statement regarding a right of way granted pursuant the 1862 Act:

"For the purposes of this case we are not impressed with the labels applied to the title of the railroads in their rights-of-way across the public lands of the United States. The concept of 'limited fee' was no doubt applied in *Townsend* because under the common law an easement was an incorporeal hereditament which did not give an exclusive right of possession. With the expansion of the meaning of easement to include, so far as railroads are concerned, a right in perpetuity to exclusive use and possession, the need for the 'limited fee' label disappeared."

Another case involving the interpretation of the 1862 right of way Act is *Rice v. United States*, 348 F.Supp. 254, 256 (Eighth CA 1972). That Court cited the *Udall* opinion with approval and stated that, "[the railroad] got something less than a fee simple . . ."

Finally it is not improper for this Court to consider constructions of the 1875 right of way Act. As noted previously the 1862 Act and 1875 Act were very similar. Since the limited fee cases were only determinative of surface right, cases involving non-

surface disputes under the 1875 Act should be given at least passing attention in resolving the present controversy. In this regard, the Tenth Circuit in the *Udall* case, supra, at 640, casts some doubt as to the differences between the two Acts relative to the surface grant. Whatever the similarities or differences there are between the Acts the courts have clearly established a separation of the dominant from the servient estate under the Act of 1875. *Chicago & Northwestern Ry Co. v. Continental Oil Co.*, 253 F.2d 468, 472 (10 CA 1958); *Himonas v. Denver & R. G. W. R. Co.*, 179 F.2d 171 (10 CA 1949).

■ The only conclusion that this Court can reach, after careful reading of the foregoing cases, is that Congress under the Pacific Railroad Acts of 1862 and 1864 separated the servient estate from the right of way grant made to the Defendant. The railroad did not get a fee simple absolute title to the land within the right of way. Out of what Professor Hohfeld said was a "complex aggregate of rights (or claims), privileges, powers and immunities" (26 Yale Law Journal 746) that we call "land," Congress granted the railroad exclusive use of the surface of the right of way, with broad and extensive rights of sub-lateral and sub-jacent support to prohibit interference with railroad operations and maintenance; but, from that Hohfeldian bundle of sticks, Congress held back some, like the right of reverter and the subsoil and mineral rights except where the lands were "coal or iron lands." The lands in question are not within the latter category. That it granted only an easement for the right of way cannot be gainsaid.

■ The Plaintiff, however, asserts no rights to the surface of the railroad right of way, but seeks a declaration that the railroad has no right to prohibit the Plaintiff from using the surface at such depth and in such manner as not to interfere with the railroad's exclusive occupancy and use of the surface right of way. For that reason the Court must next determine the extent of the rights granted to Maggie Majors by her homestead patent to the land in 1913.

That patent contained no restrictions at all relative to Defendants' right of way. It is nearly hornbook that a patent passes to the patentee all interest the government has, on the date of that patent, to everything embraced within the meaning of the term "land." 63 Am.Jur., Public Lands, Section 73. The Supreme Court in *Swendig v. Washington Water Power Co.*, 265 U.S. 322, 331, 44 S.Ct. 496, 499, 68 L.Ed. 1036 (1924), has held ". . . . when a patent is issued in accordance with governing statutes, all title and control pass from the United States." Therefore, the title to the servient estate that remained in the United States after the grant to the railroad passed to Maggie Majors by her homestead patent. The only way title would not have passed is if there had been a reservation either in the patent or implied because of existing law. There was obviously no reservation in the patent and there appears to be none implied by law. The most that can be said to have been reserved is the right of the railroad to the use of the surface for all uses incidental to railroad purposes.

We must note here that our conclusion is not meant to be a determination of the mineral rights in the lands owned by Nicodemus, for that issue is not before us. While it may seem obvious that the railroad company would be entitled to any coal and iron found beneath its right of way pursuant to the Act of Congress of July 2, 1864, 13 Stat. 356, we do not know if any coal or iron deposits exist on this land because the record is silent in that regard. The only finding this Court makes is that the servient or subsoil estate which had belonged to the United States passed to the homestead patentee, and that the Plaintiff has obtained a right for its pipeline therein.

The Court is not unmindful of apparently contrary language in *Wyoming v. Udall*, supra at 640, where the Court held that the servient estate did not pass with the land grant to the State of Wyoming. The grant there involved school lands that were subject to a railroad right of way and the right of the railroad to the subsurface coal and iron. The state could have made an "in lieu

selection" so as to receive an indemnity for the land encumbered by the railroad grant but failed to make such a selection, and the Court found that this failure worked as a forfeiture of the encumbered land. The Court stressed that Wyoming's Enabling Act exempted "all mineral lands" from the grant to the State, and said " . . . the decision here depends on the narrow issue of construction of the Wyoming Enabling Act in the light of the 1862 and 1864 Acts and the decisions relating thereto." The *Udall* case is unique and not controlling.

■ The railroad has strongly contended here that ETSI has no real property interest in the land in question. Under the banner of Justice White's opening premise in *Northern Pacific Railway Co. v. Townsend,* supra, (which it urges has never been overruled or repudiated), the railroad says that Maggie Majors got no interest in the land within the right of way because that had been taken out of the category of public lands by the railroad right of way grant. It may be argued that the statement on which this contention is made is only dictum since the Court in *Townsend* based its actual decision on other grounds. However, let us concede that Justice White is correct in saying that "the land forming the right of way therein" was taken out of the category of public lands. We have already seen that the "land forming the right of way" did not include the subsoil, servient estate. Where a patent has been regularly issued and contains no mineral reservations, it will be conclusively presumed that no mineral value was known and all rights pass to the patentee. 1 American Law of Mining, Section 3.24, p. 536; *U. S. v. Price,* 111 F.2d 206 (10 CA, 1940). In *Chickasha Cotton Oil Co. v. Town of Maysville, Okl.,* 249 F.2d 542 (10 CA, 1957), the Court of Appeals held, "It is the general common law rule—recognized by this court—that the servient estate in a strip of land set apart for railroad right-of-way, highway, or other comparable public purpose, passes with a conveyance of the fee to the abutting legal subdivision or tract out of which the right-of-way or other strip was carved even though no express provision to that effect is contained in the

conveyance . . . .". We therefore conclude that all rights except the surface estate in the right of way passed to the patentee and that ETSI has a real property interest which it obtained from its grantors, Wayne and Vera Nicodemus.

■ All this is not to say that the rights of the Defendant by virtue of its right of way are not extensive. The railroad acquired more than a mere passage over the land. *Kansas City Southern v. Arkansas Louisiana Gas Company,* 476 F.2d 829, 834 (10 CA 1973). The Defendant has acquired all rights necessarily incidental to the use of the railroad. Such rights do not preclude reasonable use of the subsurface, for support of trackage or for cuts or tunnels or similar roadbed changes. Therefore, ETSI's right to build a slurry pipeline cannot interfere with the defendant's valid railroad operations.

But, while this Court recognizes that the railroad has substantial rights which are entitled to protection, it cannot conclude that Congress created a "Maginot Line" in the form of a limited easement, through which the railroad's commercial rivals may not pass. The Defendant cannot prevent the owner of the servient estate from using the subsurface in a way that does not interfere with the operation of the railroad. *Kansas City Southern v. Arkansas Louisiana Gas Company,* supra, at 835. This, in the words of *Cincinnati, Hamilton & Dayton Railway Co. v. Wachter,* 70 Ohio St. 113, 70 N.E. 974 (1904) in permitting a crossing of a railroad right of way "is but the enforcement of a right not granted . . .". Congress could not have made a grant to the railroad in order to facilitate transportation, and at the same time have intended that grant to act as an impenetrable barrier to other forms of transportation. *Himonas v. Denver & R. A. W. R. Co.,* supra, at 173. The Supreme Court even in *Townsend,* supra, recognized this proposition when it said, " . . . Congress must have assumed . . . as settlements were made along the line of the railroad, crossings of the right of way would become necessary,

and that other limitations in favor of the general public upon the exclusive right of occupancy by the railroad of its right of way might justly be imposed." The Wyoming statutes in Section 1–789, W.S. 1955 recognize that public policy by providing that where one owns land on both sides of the railroad, a "causeway or other safe and adequate means of crossing" the railroad must be made by it.

It is therefore the conclusion of this Court that under the right of way Act of July 1, 1862 the servient estate was separated from the surface grant; that the servient estate retained by the United States then passed to the subsequent patentee under the Homestead Act of 1862, such servient estate being subject to the reasonable use of the surface by the railroad; and that although the railroad's surface right of way and its railroad operations may not be interfered with by Plaintiff as grantee of a right of way for an underground pipeline from the patentee's successor in interest, the Defendant cannot justly refuse to permit the Plaintiff to cross beneath its railroad right of way.

## ORDER AND JUDGMENT

This action having come on for hearing on December 3, 1976, on the pleadings of the parties, the respective Motions for Summary Judgment filed by the parties, certain affidavits filed herein, Memoranda of the parties, and oral argument by counsel for the parties, and the Court having entered its Memorandum Opinion herein containing its Findings of Fact and Conclusions of Law and being fully advised in the premises,

NOW, THEREFORE, it is hereby ORDERED as follows:

1. That Plaintiff's Motion for Summary Judgment is granted; and

2. That Defendant's Motion for Summary Judgment is denied; and

3. That Plaintiff, Energy Transportation Systems, Inc., be and is hereby, awarded a judgment against Defendant judicially determining (a) that Plaintiff, by virtue of being a successor in interest to the original

patentee of the North Half of Section 2, Township 14 North, Range 64 West of the Sixth Principal Meridian in Laramie County, Wyoming, has acquired a right to construct and operate a coal slurry pipeline in the subsurface strata under the Defendant's railroad right of way; but that Plaintiff's right must be utilized in a manner that will insure non-interference at all times with the Defendant's use of its railroad right of way for purposes of railroad operations and maintenance, and (b) that Defendant is permanently enjoined from interfering with the use by Plaintiff of its right in the subsurface strata of the above-described land.