## SHELL PETROLEUM CORPORATION et al. v. HOLLOW et al.

### No. 929.

Circuit Court of Appeals, Tenth Circuit.
April 11, 1934.

Rehearing Denied May 28, 1934.

John M. Holmes, of St. Louis, Mo. (Thompson, Mitchell, Thompson & Young, of St. Louis, Mo., on the brief), for appellants.

Thomas F. Shea, of Tulsa, Okl. (Harlan S. Trower, of Tulsa, Okl., and Charles G. Yankey, Harvey C. Osborne, John G. Sears,

812

Jr., and Verne M. Laing, all of Wichita, Kan., on the brief), for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

BRATTON, Circuit Judge.

This controversy involves conflicting claims to the mineral rights in one acre of land situated in the northeast corner of a described quarter section in Harvey county, Kan. Jacob H. Ediger, owner of the quarter section, joined by his wife, executed a deed in 1901 conveying the acre, being rectangular in shape and 10 rods by 16 rods in dimension, to School District No. 29. The deed contained the following provision: "Said real estate is deeded by this conveyance for and as a site for a public school building and grounds, and in case same shall cease to be so used and shall be abandoned as a site for a public school building and grounds, then this deed and conveyance shall be and become null and void, and the title to said real estate shall immediately revert to and said real estate shall at once become and remain the .property of said grantors, their heirs and assigns."

A school building was erected on the site and a school conducted there until shortly before this suit was instituted, at which time the building was removed and use of the premises for the dedicated purpose ceased.

Ediger and wife conveyed the quarter section to A. M. Martens in 1903. The conveyance contained a covenant of warranty and made no reference to the area previously conveyed to the school district. In 1924 Martens and wife executed a deed with covenant of warranty, conveying a part of the land, that is, about forty acres, to Peter B. Martens; the land thus conveyed being described as follows: "Commencing at the NE corner of the SE ¼ of Section 19, Township 22 South, Range 3 West, thence South 67 rods, thence West 61½ rods, thence South 46½ rods, thence West 21½ rods, thence North 113½ rods, thence East 83 rods to the place of beginning." The tract so described included the school area and the conveyance contained this provision of exception or exclusion: "Excepting, however, and not included in this grant, one acre in the extreme NE corner of the SE¼ which has been deeded to School District No. 29."

In 1929 Peter B. Martens and wife executed an oil and gas lease with covenant of warranty to C. E. Kayser, in which the land embraced was described in the same language, with an exception or exclusion couched in identical phraseology as that contained in the deed just described. The lease, purporting to convey the oil and gas leasehold rights for a period of ten years, has through subsequent conveyances become the property of Shell Company.

A. M. Martens died. His sole heirs at law, conceiving that the mineral rights to the acre tract were vested in them, executed two oil and gas leases to F. H. Hollow, some joining in one and the remainder in the other. Both were dated April 30, 1932, and contained covenants of warranty. They purported to convey the mineral leasehold for a period of ten years. The several instruments were duly filed for record in Harvey county.

Shell Company entered into a contract with Mabee under which he began drilling a well on the land covered by the lease from Peter B. Martens and wife to Kayser, the well apparently being near the line of the school site. Hollow began preparations to drill a well on the school tract under the leases from the heirs of A. M. Martens. Plaintiffs thereupon instituted this suit in equity, alleging the execution of the several instruments and contending that they have and own the exclusive right to explore for and produce oil and gas on the acre tract; that the leases to defendant Hollow are without effect; that if he is permitted to drill the threatened well it will result in large quantities of oil worth several thousands of dollars being drained from under the premises covered by their lease estate. Other facts are alleged. They relate to a contract between Shell Company and the school district, made long prior to the abandonment of the premises for school purposes, but in view of the conclusion reached with respect to the decisive questions in the case, it is unnecessary to state or discuss them.

Plaintiffs prayed that the cloud on their title, created by the execution and recordation of the leases to defendant Hollow, be removed; that Hollow be enjoined from drilling on the premises; and for an accounting. Defendants interposed a joint and separate motion to dismiss in the nature of a demurrer, on the ground that the bill disclosed on its face that it presented no equity and that plaintiffs were not entitled to the relief sought. The motion was sustained and a decree entered dismissing the bill. The case is here on appeal.

■ The deed from Ediger and wife to the school district was in the nature of a dedication for the specified purpose, with provision for reversion upon termination of that use.

It created an easement. School Dist. v. Barnes, 110 Kan. 25, 202 P. 849; School Dist. v. Fleak, 120 Kan. 570, 245 P. 150.

Counsel discuss at length and interestingly whether the instrument created a fee-simple estate on condition subsequent with the possibility of reverter, or an estate in determinable fee. It is unnecessary to determine that question because the common-law rule that the possibility of reverter is neither an alienable, assignable, or descendable estate has been abrogated by statute in Kansas.

"The term 'heirs,' or other words of inheritance, shall not be necessary to create or convey an estate in fee simple; and every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant." Section 67—202, Revised Statutes Kansas 1923.

"Any person claiming title to real estate may, notwithstanding there may be an adverse possession thereof, sell and convey his interest therein, in the same manner and with like effect as if he was in the actual possession thereof." Section 67—208, Id.

"In the construction of the statutes of this state the following rules shall be observed, unless such construction would be inconsistent with the manifest intent of the legislature or repugnant to the context of the statute: * * *

"Eighth. The word 'land,' and the phrases 'real estate' and 'real property,' include lands, tenements and hereditaments, and all rights thereto and interest therein, equitable as well as legal." Section 77—201, Id.

It is settled law in the state of Kansas that these statutes constitute a liberal system under which any interest in land may be conveyed by deed. In Miller v. Miller, 91 Kan. 1, 136 P. 953, 954, L. R. A. 1915A, 671, Ann. Cas. 1917A, 918, it was said:

"The words 'conveyances of land' mean, of course, the land itself in fee simple absolute. The words 'any other estate or interest therein' include estates of freehold and less than freehold, of inheritance and not of inheritance, absolute and limited, present and future, vested and contingent, and any other kind a grantor may choose to invest consistent, of course, with public policy. * * *

"The Legislature of 1855 placed conveyances by deed on the same footing as wills so far as the creation of future estates was concerned; but, following the lead of the Legislatures of some of the older states, the Kansas Legislature of 1868 undertook not only to permit the granting of future estates but to abolish other common-law restrictions on alienation not suited to allodial tenures and modern conveyancing, and to make transfers of interests in land as free as possible. The concluding portion of section 3 of the act of 1868, quoted above, expressly abolishes the common-law ceremony of livery of seisin which stood as an insuperable bar to the creation of freeholds to begin in futuro unless supported by a particular estate. The language was adapted from statutes of other states which usually provided that deeds duly acknowledged and recorded should be valid and pass estates in land 'without livery of seisin, attornment, or other ceremony whatever.'"

The court employed the following language in Platt v. Woodland, 121 Kan. 291, 246 P. 1017, 1020: "Whenever an interest in the land itself is recognized, the interest may be conveyed by deed describing the land, and it is of no consequence whether the instrument specifically describe the interest or contain full covenants of warranty or be a plain quit-claim."

Again, in Knutson v. Hederstedt, 125 Kan. 312, 264 P. 41, 43, it was tersely said: "It is no longer open for debate in this jurisdiction that any sort of right or interest in property vested or contingent may be the subject of legitimate barter and sale, unless such a construction of the right or interest would be subversive of the clear intention of the testator or grantor through whom the right or interest is derived."

The scope of the statutes and their wide operative effect, as thus interpreted, is apparent.[1] Under a well-recognized rule of long duration we follow the construction that court has accorded them. Terry v. Midwest Refining Co. (C. C. A.) 64 F.(2d) 428; Aetna Life Ins. Co. v. Wertheimer (C. C. A.) 64 F.(2d) 438; Bivins v. Board of Com'rs (C. C. A.) 66 F.(2d) 351.

Obviously, it is immaterial to a decision of this case whether the deed to the school district conveyed a fee-simple estate on condition subsequent or an estate in determinable fee. A discussion of that question would be beside the decisive point. The rights of Ediger, in either event and whatever their na-

[1] A valuable compilation of the statutes and decisions of other states upon this subject may be found in the American Law Institute's Restatement of Property (Tentative Draft No. 4) § 201.

814

ture, could be passed by deed. The question logically presenting itself for consideration, therefore, is whether the deed from Ediger and wife conveyed that interest to A. M. Martens. As stated, the instrument described and purported to convey the entire quarter section without making reference to the acre tract.

■ Decisions could be multiplied holding that the servient estate in a small tract, usually in the form of a strip set apart for highway or railway right of way purposes, passes with a conveyance of the fee to the abutting tract of which the strip formerly was a part. The servient estate passes with such a conveyance, even though no express provision to that effect is contained in the instrument. The rule is that such estate passes unless it is excluded by clear, unequivocal, and unmistakable language. The considerations of sound public policy evoking the application of that doctrine and constituting its undergirder, as well as the mischief sought to be obviated by it, was declared by the late Chief Justice Taft, then Circuit Judge, in Paine v. Consumers' F. & S. Co. (C. C. A.) 71 F. 626, 632, as follows: "The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases."

The doctrine thus enunciated has been applied to the conveyance of land abutting a right of way for highway purposes in Kansas, Bowers v. A., T. & S. F. R. Co., 119 Kan. 202, 237 P. 913, 42 A. L. R. 228; and to the conveyance of land abutting a right of way for railway purposes, Roxana Petr. Corp. v. Sutter (C. C. A.) 28 F.(2d) 159; Shell Petr. Corp. v. Corn (C. C. A.) 54 F.(2d) 767; Roxana Petr. Corp. v. Jarvis, 127 Kan. 365, 273 P. 661; Barker v. Lashbrook, 128 Kan. 595, 279 P. 12, 14; it being held in each instance that conveyance of the fee of the abutting tract passes title to the servient estate in the land embraced within the right of way. So far as our research discloses, no case has arisen presenting the question whether that doctrine should be extended to small tracts dedicated to school purposes, but denial of its application to such cases would provoke conflict of claims and vexatious litigation among remote claimants to isolated and comparatively useless small tracts separated from the adjoining lands. The basis of the decisions, to which reference has been made, is to declare on grounds of public policy that it obtains in cases of rights of way in order to prevent such vexatious controversies and litigation. The same sound public policy requires its application here. No substantial distinguishing features are conceived requiring its application in those cases and its denial here. We think, therefore, that the deed from Ediger and wife to A. M. Martens conveyed the servient estate to the acre to which the school district owned the dominant title.

■■ The effect of the description followed by the provision of exception or exclusion contained in the deed from A. M. Martens and wife to Peter B. Martens and the identical phraseology in the mineral lease from Peter B. Martens and wife to Kayser, under which plaintiffs hold, remains for consideration. It may be said generally that the servient estate passes with a conveyance of the fee to the abutting tract when the instrument is silent with respect to the matter, or if the estate is not excluded in clear, unequivocal, and unmistakable language. Exclusion by clear, unequivocal, and unmistakable terms is required, and a reservation is construed more strictly than a grant. The provision in question does not indicate clearly, unequivocally, and unmistakably an intent to exclude the servient estate. Instead, it reflects a purpose to exclude the dominant estate then held by the school district. It reflects the desire of a reasonably prudent person to safeguard himself against liability on his warranty for the dominant estate of the school district. That is the rationale of the situation, rather than a desire to reserve the right to reacquire the dominant estate upon its possible reverter through abandonment of the premises for the dedicated purpose at some future time. The language does not compel the conclusion that the grantors intended to convey a less estate than that which reposed in them, and for that reason it fails to meet the exacting rule of exclusion by clear, unequivocal, and unmistakable phraseology. Bowers v. A., T. & S. F. R. Co., supra. The case of Barker v. Lashbrook, supra, seems to be decisive. It involved the construction of a deed conveying a tract of 120 acres out of which one acre had been conveyed for school purposes, also a right of way for railway purposes. The land was described by metes and bounds and concluded with this provision: "Less one acre in southeast corner for school purposes and 3.81 acres taken by Kansas City, Wyandotte & Northwestern Railway, containing 117.19 acres, more or less." The 3.81-acre

strip previously conveyed to the railway company was in controversy. The court held that the exclusion related only to the dominant estate, that it did not attach to the servient estate, and that the servient estate reposing in the grantor passed. It was said:

"In the case at bar there is nothing more than in the Roxana Case to express the intent to reserve to the grantor the servient estate in the right of way, except the statement of 3 acres included in the right of way and the statement of 117 remaining, instead of 120. Appellee argues that this should conclusively show the conveyance was intended to be limited to the remaining portion, or 117 acres, but we do not think the enumeration of acres changes the evident intent of the grantor when she was required by the statute to make any such reservation expressly appear. The most apparent purpose of such statement of acreage excepted for the purpose named and statement of acres remaining was to protect the grantor against the warranties of the deed and to indicate that the railroad held the dominant estate to the 3 acres and she only the servient estate thereto, leaving only 117 acres free from a dominant right of the railroad company. * * *

"We conclude that the exception made in the deed here in question is not such as to make it expressly appear that a less estate than that which the grantor had was intended to be conveyed to the grantee. On the contrary, the language employed is that which is usually and ordinarily used to express the fact that a dominant estate to a certain portion of the land was already in another."

The language there was certainly as definite and unequivocal as that here, if not more so. Still the court held it was not enough to except the servient estate. It is our considered judgment that the exclusion contained in the deed and in the mineral lease in question related exclusively to the dominant estate then held by the school district. It follows that upon the abandonment of the premises for school purposes the several covenants of warranty attached, thus vesting in plaintiffs the exclusive right to drill for and develop oil and gas on the school site and rendering the leases to defendant Hollow ineffective.

The trial court erred in dismissing the bill. The judgment is reversed, and the cause remanded, with directions to overrule the motion and to proceed in accordance with the views expressed herein.

Reversed and remanded.