No. 42,174

Jack Carpenter and Dorotha Carpenter, Husband and Wife, and Otto Plagens, *Appellees*, v. Ivah J. Fager, F. G. Stearns and J. Merwyn Fager, Trustees Under the Will and of the Estate of C. C. Fager, Deceased; Ivah J. Fager, J. Merwyn Fager and Josephine Fager, His Wife; Carol Ann Fager, a Minor, and Nellie Virginia Fager, a Minor, *Appellants*.

(361 P. 2d 861)

Opinion filed May 13, 1961.

*Donald L. Cordes*, of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky* and *Robert L. Howard*, all of Wichita, were with him on the briefs for the appellants.

*James D. Van Pelt*, of Wichita, argued the cause, and *Dale M. Bryant, Morris H. Cundiff, Garner E. Shriver, Glenn J. Shanahan* and *Orlin L. Wagner*, all of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

Wertz, J.: Plaintiffs (appellees), Jack and Dorotha Carpenter and Otto Plagens, successors in title from C. C. Fager, brought this action against the heirs of C. C. Fager, deceased, defendants (appellants), and others not concerned with the question involved herein, to quiet title to the property in question involving some thirty-two acres, .92 of an acre of which is in controversy. From an order of the trial court finding plaintiffs to be the owners in fee simple of the real estate in question, subject only to the surface easement of the Sunflower Improvement District for improvement district purposes, and entering judgment accordingly, quieting title in plaintiffs, defendants appeal.

In September, 1951, C. C. Fager owned the thirty-two acres of land, and at that time the Sunflower Improvement District instituted condemnation proceedings condemning, for public use, the .92 of an acre, consisting of a narrow strip twenty to eighty

feet wide across the southernmost portion of the land now in possession of the plaintiffs. A sewage disposal plant operated by Sunflower occupies the surface of the narrow strip condemned for that purpose.

After the death of C. C. Fager, the remaining land lying immediately north of and contiguous to the Sunflower strip was surveyed by metes and bounds and included in the inventory of Mr. Fager's estate. In 1952, this land was conveyed by the executors of the Fager estate to the Southwestern Electrical Company. It, in turn, conveyed the property to the Carpenters, who, in turn, conveyed a one-half interest to Plagens. All the deeds described the property in metes and bounds and did not describe any portion of the land condemned by Sunflower, although it was contiguous thereto.

This action apparently arose as a result of our decision in *Sutton v. Frazier*, 183 Kan. 33, 325 P. 2d 338, wherein we held that under the applicable statute Sunflower had no right to condemn the fee in the .92 of an acre, and that Sunflower did not acquire title to the minerals in place by the condemnation proceedings. We stated therein that the general rule is that eminent domain statutes will be construed to authorize only the taking of an easement on or title to land sufficient for the public use intended rather than a fee title, unless the statute clearly, either expressly or by necessary implication, provides otherwise. It follows that Sunflower, by its condemnation, took nothing more than an easement and only so much of the surface as was needed to build thereon and operate a good and sufficient disposal plant for the public, and the fee title to the .92 of an acre, therefore, remained in C. C. Fager.

It is the contention of the plaintiffs that when the executors of the estate of C. C. Fager, deceased, conveyed the tract of land adjoining the property condemned by Sunflower, the grantors conveyed the servient estate in the property so condemned. Plaintiffs base their argument on the general rule followed in this state that when an owner conveys a tract of land abutting on a small parcel in which the grantors own the servient estate and another party owns the dominant estate for easement or right-of-way purposes, the conveyance passes such servient estate to his grantee, unless the intention not to do so is clearly indicated, by specific reservation, in the deed.

The defendant trustees and heirs contend that such grant to the

plaintiffs did not pass the servient estate in the property condemned by Sunflower for the reason that the grantors did not intend to convey the servient estate, and for the further reason that a dominant-servient estate situation does not exist in a case where property is condemned for public use other than for highway and railroad purposes, and that the highway and railroad rule should not be extended to apply in the instant case.

We think plaintiffs' contention is correct. One whose property is subjected to condemnation for public use is nonetheless the owner of the fee and holder of the ultimate title. He has what the law calls the servient estate. The public body for whose purpose the condemnation was made has what is called the dominant estate, and while the fee holder, after condemnation, may not interfere with the rights of the holder of the dominant estate, yet, as owner, he may still continue to use the property for any purpose which does not frustrate the public use for which the property was condemned. (*Harvey v. Railroad Co.*, 111 Kan. 371, 372, 207 Pac. 761; *Federal Farm Mortgage Corp. v. Smith,* 149 Kan. 789, 791, 89 P. 2d 838.) That the presumption embodied in the highway rule should be applied in the instant case is evident from the language of Mr. Justice Burch, speaking for this court in *Bowers v. Atchison, T. & S. F. Rly. Co.,* 119 Kan. 202, 204, 205, 237 Pac. 913, 42 A. L. R. 228:

"The deed was to be interpreted most favorably to the grantee. The probability that the grantor would purposely deprive his grantee of the benefit of the servient soil, and reserve what in the great majority of instances would be of no use to the grantor, was always slight. Experience revealed that separate ownership of long, narrow strips of land distinct from the territory adjoining on each side was prolific of private dispute and public disturbance, and public policy became an important factor in the interpretation. Therefore it became settled doctrine that a deed of land abutting on a road passes a moiety of the road, unless intention not to do so be clearly indicated."

It was further stated, quoting from *Van Winkle v. Van Winkle,* 184 N. Y. 193:

" 'Where a survey gives the dimensions and quantity of the land conveyed exclusive of the public way, it does not operate to destroy the presumption that the fee to the roadbed was conveyed, . . .' "

See also *Barker v. Lashbrook,* 128 Kan. 595, 279 Pac. 12.

A conveyance by a grantor of a parcel of ground abutting an easement without a clear reservation of any right to the servient estate grants, in addition to the parcel, all rights which the grantor may have by reason of such easement, even though the metes and

bounds description in the conveyance extends only to the boundary of the easement. In other words, a conveyance of land abutting an easement gives the grantee the same right of ownership to the easement as the grantor had, unless the grantor makes his purpose to exclude clear by express declaration, or equivalent to express declaration, in the instrument. (*Bowers v. Atchison, T. & S. F. Rly. Co.*, supra; *Greenberg v. L. I. S. Co.*, 161 Ohio St. 351, 119 N. E. 2d 292, 49 A. L. R. 2d 974.)

In *United States v. Magnolia Petroleum Co.* (10th Cir.), 110 F. 2d 212, 217, 218, it was stated:

"It is the general rule that the servient estate in a strip of land set apart for a railroad or highway right-of-way, or for a street, or a small area set apart for school, church, *or other public purpose,* passes with a conveyance of the fee to the abutting legal subdivision or tract out of which the strip or small area was carved even though no express provision to that effect is contained in the instrument of conveyance, . . . *Shell Petroleum Corporation v. Corn,* 10 Cir., 54 F. 2d 766; *Shell Petroleum Corporation v. Hollow,* 10 Cir., 70 F. 2d 811; *Roxana Petroleum Corporation v. Sutter,* 10 Cir., 28 F. 2d 159; *Shell Petroleum Corporation v. Ward,* 5 Cir., 100 F. 2d 778; *Bowers v. Atchison, T. & S. F. Rly. Co.,* 119 Kan. 202, 237 P. 913, 42 A. L. R. 228; *Barker v. Lashbrook,* 128 Kan. 595, 279 P. 12. In *Paine v. Consumers' Forwarding & Storage Co.,* 6 Cir., 71 F. 626, 632, it was said: 'The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases.'" (Emphasis supplied.)

We could mention many other decisions holding that the servient estate in a small tract, usually in the form of a strip set apart for highway or other public use, passes with a conveyance of the fee to the abutting tract of which the strip was formerly a part. The servient estate passes with such a conveyance, even though no express provision to that effect is contained in the instrument. The rule is that such estate passes, unless it is excluded by clear, unequivocal and unmistakable language. (*Shell Petroleum Corporation v. Hollow* [10th Cir.], 70 F. 2d 811, 814.)

It is obvious from the mentioned cases that the highway rule is applicable in a situation where the land abutting a public easement is conveyed. In other words, the fact that there is an easement necessarily implies the interest in the servient estate still belongs to the abutting landowner, and when the abutting land is conveyed by the owner who says nothing about the servient estate, the law pre-

sumes he intended to also convey the servient estate. Defendants contend they had no intention of conveying the servient estate. This is not the interpretative test. The test is whether the deed expressed intention to *exclude* from the grant the land lying under the easement. It is apparent the deed did not do so, and the servient estate passed with the conveyance of the land abutting thereon. (*Bowers v. Atchison, T. & S. F. Rly. Co.,* supra, p. 208.) To hold otherwise would unnecessarily encumber a great number of land titles in our state. If the grantors of the Fager estate intended to reserve the servient estate they should have made clear and explicit provisions in the deed for so doing. This they failed to do and the conveyance of the land by the executors passed the interest in the servient estate to the succeeding grantees, plaintiffs herein.

Defendants' other contentions have been considered and, in view of what has been heretofore stated, are found to be without merit substantial enough to authorize a reversal of the judgment. The judgment of the trial court quieting title in the plaintiffs is affirmed.

It is so ordered.