**ENERGY TRANSPORTATION SYSTEMS, INC., a Delaware Corporation, Plaintiff,**

v.

**UNION PACIFIC RAILROAD COMPANY, a Utah Corporation, Defendant (two cases).**

**Nos. 77–4116, 77–4151.**

United States District Court, D. Kansas.

June 27, 1978.

William C. Farmer, Wichita, Kan., for plaintiff in case nos. 77–4116 and 77–4141.

Philip H. Lewis, Topeka, Kan., for defendant in case no. 77–4116.

C. Barry Schaefer, Harry Lustgarten, Jr., Howard F. Coray, Omaha, Neb., for defendant in case nos. 77–4116 and 77–4141.

Eidson, Lewis, Porter & Haynes, Topeka, Kan., for defendant in case no. 77–4151.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

These actions have been consolidated for purposes of disposition of pending cross motions for summary judgments. The parties have stipulated to the material facts. No genuine issue of material fact exists; therefore, the summary judgment motions of plaintiff and defendant are ripe for disposition.

Plaintiff seeks to construct and operate a coal slurry pipeline from Wyoming to Arkansas, and plans to lay a pipeline under and across defendant's railroad right of way. Plaintiff brings this action for quiet title and/or declaratory judgment against the defendant railroad company seeking a determination of its rights to lay said pipeline across the two areas in dispute.

Case No. 77–4116 was originally filed in the State District Court of Trego County, Kansas, but was removed by defendant.

At issue in this case is land in Section 31, Township 12, Range 21 West of the Sixth Principal Meridian. Defendant's railroad crosses this section. Defendant's interest can be traced to a grant under the Pacific Railroad Acts of 1862 and 1864, which shall be discussed in detail *infra*. Plaintiff's interest in the tract can be traced to a conveyance made by defendant's predecessor[1] to Rachel Boyer by warranty deed dated April 12, 1879. The warranty deed conveyed a fee simple interest to Boyer, and its granting clause read:

> To have and to hold the said tract of land with all and every the appurtenances to the said Rachel E. Boyer, her heirs and assigns and forever warrant and defend . . .

The deed also reserved to the grantor railroad "a strip of land 400 feet wide to be used by the first party for right of way and other railroad purposes . . ."

By mesne conveyances Boyer's interest in the tract of land has come into the hands of the present owners of the land, the Wynns. Plaintiff has obtained from the Wynns a right of way easement authorizing plaintiff to lay its coal slurry pipeline across said tract, including the subsurface of any railroad right of way.

Case No. 77–4161 was originally filed in State District Court in Gove County, Kansas. Defendant removed this action also. The facts are substantially similar to the Trego County case. The land in question in Gove County is Section No. Three, Township 11, Range 29, West of the Sixth Principal Meridian. Again, defendant traces its interest in the land to a grant under the Pacific Railroad Acts of 1862 and 1864. Plaintiff traces its interest in the land to a conveyance made by defendant's predecessor to a Mr. Good. The warranty deed from defendant's predecessor in interest to Good contained a reservation of "the right of way for said railway as now located on the premises . . ."

---

1. We shall not take the trouble to trace the numerous transactions which led the interest of the original grantee of the Pacific Railroad Acts to be in the hands of defendant. It suffices to say that the parties stipulate that such transactions have occurred and that defendant may be considered the direct successor in interest of the original grantee. Therefore, in this opinion we shall not distinguish between defendant and its predecessors in interest, and shall write as though defendant were the original grantee.

By mesne conveyances, Good's interest in the tract has passed to the present owners, the Gassmans, who have granted plaintiff a pipeline easement substantially identical to that plaintiff obtained in Trego County.

We should note that following the two conveyances (defendant's predecessor to Boyer in Trego County and defendant's predecessor to Good in Gove County), the United States issued a patent concerning the tracts in question, granting them to the defendant's predecessor.

### The Pacific Railroad Acts

Before we enter into a discussion of the specific issues of this case, we feel it would be helpful to briefly set forth the most important provisions of the Pacific Railroad Acts. The grants made pursuant to those acts give rise to the interests of both parties to this action.

The Act with which we are primarily concerned is the first of the Pacific Railroad Acts, approved July 1, 1862, (12 Stat. 489) (hereafter referred to as the "Act of 1862" or the "1862 Act"). That Act contained two critical sections. Section 2 of the 1862 Act granted the Union Pacific a right of way over which to build a transcontinental railroad. Section 3 of the Act granted the Union Pacific five odd-numbered sections per mile. The land grants contained in Section 3 were designed to help finance the mammoth undertaking. Later, in the second of the Pacific Railroad Acts, the Act of July 2, 1864, (13 Stat. 356), Congress amended the land grant provision in order to give the Union Pacific 10 odd-numbered sections per mile, thus doubling the land grant.

Section 2 of the Act of 1862 reads, in pertinent part, as follows:

And be it further enacted, That the right of way through the public lands be, and the same is hereby granted to said company for the construction of said railroad and telegraph line; . . . said right of way is granted to said railroad to the extent of two hundred feet in width on each side of said railroad where it may pass over the public lands, including all necessary grounds for stations, buildings, workshops, and depots, machine shops, switches, side tracks, turntables, and water stations. . . .

Section 3 of the 1862 Act reads, in pertinent part, as follows:

And be it further enacted, That there be, and is hereby, granted to the said company, for the purpose of aiding in the construction of said railroad and telegraph line, . . . alternate section of public land, designated by odd numbers, to the amount of five alternate sections per mile on each side of said railroad, on the line thereof, and within the limits of ten miles on each side of said road, not sold, reserved, or otherwise disposed of by the United States, and to which a preemption or homestead claim may not have attached, at the time the line of said road is definitely fixed: Provided, That all mineral lands shall be excepted from the operation of this act; . . . And all such lands, so granted by this section, which shall not be sold or disposed of by said company within three years after the entire road shall have been completed, shall be subject to settlement and preemption, like other lands, at a price not exceeding one dollar and twenty-five cents per acre, to be paid to said company."

See also § 3 of the 1864 Act (stating that the Union Pacific Railroad Company is empowered to take the right of way for certain railroad purposes and "shall thereby acquire full title to the same for the purposes aforesaid"); § 4 of the 1864 Act (doubling the land grant sections (from five per mile to ten per mile) authorized in the 1862 Act); Act of July 3, 1866 (14 Stat. 79); and Act of March 3, 1869 (15 Stat. 324).

The arguments of the parties revolve significantly around construction of the Pacific Railroad Acts. The parties have given particular attention to four cases which we shall summarize briefly here. First, *Northern Pacific Ry. Co. v. Townsend*, 190 U.S. 267, 23 S.Ct. 671, 47 L.Ed. 1044 (1903) (hereinafter *"Townsend"*) held that under § 2 of the 13 Stat. 365 (equivalent to the 1864

Pacific Railroad Act), the Northern Pacific Railroad had been granted a "limited fee" in its right of way which could not be transferred or lost by adverse possession pursuant to state law.

The second important case is *Great Northern Ry. Co. v. United States*, 315 U.S. 262, 62 S.Ct. 529, 86 L.Ed. 836 (1942) (hereinafter "*Great Northern*"), which held that under the provisions of the Right of Way Act of March 3, 1875 (arguably similar to Sec. 2 of the 1862 Act), the grantee railroads received only an easement, not a fee.

The third case is *United States v. Union Pacific Railroad Co.*, 353 U.S. 112, 77 S.Ct. 685, 1 L.Ed.2d 693 (1957) (hereinafter "*Union Pacific*"), in which it was held that the exception of mineral lands in Section 3 of the 1862 Act served to reserve for the United States all mineral lands granted via the 1862 Act, including those under the right of way granted in Section 2.

Finally, the parties discuss in detail *Energy Transportation Systems, Inc. v. Union Pacific Railroad Co.*, 435 F.Supp. 313 (D.Wyo.1977) (hereinafter *ETSI v. U. PAC.*), in which Judge Brimmer ruled in an earlier battle in the same war which the parties are fighting here, that under Section 2 of the 1862 Act, the Union Pacific Railroad received only an "easement" which would not preclude reasonable use of the subsurface underlying the right of way. The *ETSI v. U. PAC.* case involved an attempt by plaintiff to lay its pipeline under defendant's railroad right of way on an even-numbered section of land. Here, of course, we are concerned with an odd-numbered section of land, which is a land grant section granted to defendant pursuant to Section 3 of the 1862 Act.

This case will be resolved by a determination of the nature of the interests in the tracts in question which are held by the respective parties. In making this determination, three major issues must be resolved:

(1) What sort of interest in the tracts in question did defendant receive under the Pacific Railroad Acts?

(2) What sort of interest in the subject tracts *could* defendant convey?

(3) What sort of interest in the subject tracts *did* defendant convey to the predecessors in interest of the present owners?

## What Sort of an Interest in the Tracts in Question Did Defendant Receive under the Pacific Railroad Acts?

Turning to the specific features of our case, we must first determine what sort of an interest in the tracts in question the 1862 Act granted to Union Pacific. Union Pacific claims that it has a "fee" interest in the lands. More specifically, Union Pacific claims that it was granted the fee to the land underlying the right of way (in these odd-numbered sections), with said fee limited only by certain interests reserved by the United States. The interests reserved by the United States are (1) a reverter interest should the railroad right of way be abandoned or used for an inconsistent purpose, and (2) an interest in "mineral lands" as provided in Section 3 of the 1862 Act. *See Townsend, supra,* 190 U.S. at 271, 23 S.Ct. 671; *ETSI v. U. PAC., supra,* 435 F.Supp. at 315.

■ We agree that the 1862 Act granted defendant a fee interest (limited only by the United States' reverter interest and mineral interest) in the tracts in Trego and Gove County over which the present dispute arose. We believe that the Union Pacific's interest included the servient estate beneath the right of way granted by Section 2 of the 1862 Act.

Whether defendant obtained its interest in the servient estate pursuant to Section 2 (right of way grant) of the Act or Section 3 (land grant) of the Act is a matter of some dispute. In *ETSI v. U. PAC., supra,* defendant argued that it received such an interest by a Section 2 right of way granted in an even-numbered section. Judge Brimmer rejected defendant's argument, holding that defendant received only an easement under Section 2. That decision has now been appealed and is pending before the Tenth Circuit Court of Appeals. We realize that Judge Brimmer decided a close question, and that Union Pacific can make a

persuasive argument that it received more than a mere easement pursuant to Section 2 of the 1862 Act. However, since we deal with a case involving an odd-numbered section of land, we need not reach the issue decided by Judge Brimmer. We are convinced that because the Union Pacific received both a Section 2 right of way grant and a Section 3 land grant in the two tracts at issue here, that it did indeed receive a fee which is limited only by the interests reserved by the United States. Through either Section 2 or Section 3, or the two operating together, we are convinced that the defendant received a fee interest in the servient estate underlying the railroad right of way in these two odd-numbered sections.

Our conclusion in this regard is buttressed by the Supreme Court's decision in *Great Northern*. In that decision, as noted above, the Supreme Court held that the Act of 1875 granted railroads only an easement in the right of way. However, the Court stressed the congressional change of policy which occurred in 1871, making subsequent congressional grants to railroads much more niggardly than pre-1871 grants. The Court distinguished the 1875 right of way grant from such grants as those made under the 1862 Act by noting:

> When Congress made outright grants to a railroad of alternate sections of public land along the right of way, there is little reason to suppose that it intended to give only an easement in the right of way granted in the same act. [315 U.S. at 278, 62 S.Ct. at 536]

It must be recalled, in light of this broad statement in *Great Northern*, that even though defendant received a fee interest in odd-numbered sections (including the servient estate beneath the right of way) under § 3 of the 1862 Act, that interest is still limited by the right of reverter and reser-

vation of mineral lands of the United States. *H. A. & L. D. Holland Co. v. Northern Pacific Railway Co.*, 214 F. 920, 924–925 (9th Cir. 1914).

We thus hold that defendant received by virtue of the Pacific Railroad Acts the entire interest in the right of way and its servient estate in odd-numbered sections, limited only by the government's right of reverter and reservation of mineral lands. With this in mind, we turn to the question of what portion of that interest the defendant *could* convey.

### What Interest in these Tracts Could Defendant Convey?

It is defendant's primary contention that it could not convey the type of interest which would allow the present-day owners of the tract to grant an easement such as plaintiff claims. Union Pacific argues that no matter what interest it held, or attempted to convey, that it could not consistent with federal law convey to Boyer and Good an interest in the servient estate beneath the railroad rights of way at issue. Defendant's contention is firmly rooted in the Supreme Court's holding in *Townsend*.

As indicated earlier in the opinion, *Townsend* involved a grant to the Northern Pacific Railroad Company under the Act of Congress, July 2, 1864 (13 Stat. 365), which is identical for all practical purposes to the grant to defendant with which we are concerned. *Townsend* involved the question of whether a railroad could lose its interest in a right of way to adverse possession pursuant to state law. The Supreme Court held that a railroad could not lose its interest in the right of way to adverse possession.

The *Townsend* factual situation involved a homestead claim[2] to an even-numbered

**2.** Defendant cites the first paragraph of *Townsend*, and *Rice v. United States*, 348 F.Supp. 254 (D.N.D.1972), *aff'd* 479 F.2d 58 (8th Cir. 1973), *cert. denied*, 414 U.S. 858, 94 S.Ct. 66, 38 L.Ed.2d 108 (1973), as supporting the proposition that the railroad could not convey the servient estate under the right of way, and that the United States did not grant it by later patent.

We believe both cases are clearly distinguishable from the case at hand. The first paragraph of *Townsend* is merely saying that no interest could be obtained in the railroad right of way under the homestead laws, because those laws allowed the acquiring of an interest only in "public lands." After the grant to the railroad, the land within the right of way was no longer "public." The same situation obtain-

section. The Northern Pacific had obtained a right of way interest in that tract, but not a land grant interest. In characterizing the interest received by the railroad, the Supreme Court termed it a "limited fee". The key limitation to the fee was the implied condition of reverter in the event the railroad ceased to use or retain the land for the purpose for which it was granted, that is, the construction and maintenance of a railroad.

Thus, the purpose of the United States in making the grant, the building and maintenance of a transcontinental railroad, would have been ill-served had the grantee been able to frustrate said construction by abandoning or selling its interest in the granted right of way. With the implied condition of reverter, the United States would have the right to reclaim the grant to the extent necessary to preserve the railroad.

The *Townsend* decision relied upon *Grand Trunk Railroad v. Richardson*, 91 U.S. 454, 468, 23 L.Ed. 356 (1875), for the proposition that

. . . a railroad company is not at liberty to alienate any part of its roadway so as to interfere with the full exercise of the franchises granted.

If the railroad could not voluntarily convey that interest because it would frustrate the purpose of the grant, it followed logically that the purposes could not be frustrated by state laws of adverse possession which would have the same effect. Thus, the Supreme Court concluded:

. . . the nature of the duties imposed by Congress upon the railroad company and the character of the title con-

ferred by Congress in giving the right of way through the public domain are inconsistent with the power in an individual to acquire, for private purposes, by limitation, a portion of the right of way granted by Congress . . . [190 U.S. at 273, 23 S.Ct. at 673]

However, even in *Townsend* the Supreme Court recognized that the right of way grant could not be held inviolate because other uses of the railroad right of way, which could occur without impinging upon the purpose of the grant, might be necessary:

Of course, nothing that has been said in anywise imports that a right of way granted through the public domain within a State is not amenable to the police power of the State. Congress must have assumed when making this grant, for instance, that in the natural order of events, as settlements were made along the line of the railroad, crossings of the right of way would become necessary, and that other limitations in favor of the general public upon an exclusive right of occupancy by the railroad of its right of way might be justly imposed. But such limitations are in no sense analogous to claim of adverse ownership for private use. [190 U.S. at 272, 23 S.Ct. at 673]

The key to the *Townsend* case was that the Supreme Court refused to accept any proposition which "would conflict with the powers and duties imposed by law on a railroad corporation." [190 U.S. at 273, 23 S.Ct. at 673] The private right of adverse possession under state law was recognized as conflicting with the purpose of the railroad grant. We think it clear that the

ed in *Rice* wherein the successors of homesteaders attempted to claim oil and gas rights within the right of way granted to the Northern Pacific by an Act of July 2, 1864. The claimants' predecessor in interest had obtained a homestead patent in the land in question. The patent did not mention the interest of the railroad. The Court decided the case on the basis that the General Land Office, acting as agent for the United States, exceeded its apparent and actual authority by issuing a patent which ignored the interest of the railroad which had constructed the line several years before any homestead rights had vested. The Court noted

that the Homestead Act made available for settlement "unappropriated public lands." Act of May 20, 1862, § 1.

These cases are clearly distinguishable from the case at hand which does not involve the homestead laws. We do not believe that *Townsend* and *Rice* can be used as a basis to argue that Section 2 of the 1862 Act granted a right of way to the defendant's predecessor which then took the land out of the "public domain" so that the land within the right of way was unaffected by the Section 3 land grant.

focus of *Townsend* was not upon what interest the railroad obtained under the grant in question, but upon what interest the railroad could convey or lose without being inconsistent with the grant.

An important decision following the *Townsend* rationale which must be discussed is *H. A. & L. D. Holland Co. v. Northern Pacific Ry. Co., supra.* *Holland* involved an *odd-numbered* section of land in Washington also granted by the United States to the Northern Pacific Railroad by Act of July 2, 1864 (13 Stat. 365). Plaintiffs in the case claimed that a certain road running parallel to the railroad and within the right of way had either statutorily or by common law been *dedicated* to public use. The defendant railroad argued, and the court agreed, that it was incapable of divesting itself of an interest in the land sufficient so that the public could take exclusive occupancy.

In examining the nature of the interest which the railroad had in the tract, the Court noted that the case was different from *Townsend* in that it was an odd-numbered "land grant" section:

> Our first inquiry relates to the nature of the railroad company's estate. If title vested in it by operation of section 3 of the grant, there is no room for controversy touching the extent of its rights, for upon that assumption it became clothed with full power of disposition, such as is ordinarily incident to unrestricted private ownership. But a different case is presented if the strip constitutes a part of the right of way granted by section 2. Lands falling within this provision are acquired upon the implied condition that they be used for railroad purposes, and the rights conferred are limited to such use. Generally speaking, it is not within the power of the grantee to defeat the designated purpose of the grant by a voluntary alienation of title, or by abandoning possession to an adverse claimant. [214 F. at 923]

The *Holland* opinion then held that the purpose of the grant which was represented in the right of reverter to the right of way, was not overridden by the fee grant of § 3:

> We are unable to accept the view, that because the right of way at this place is in an odd-numbered section, the railroad company took the absolute title, unlimited by the implied condition of reverter attending the right of way grant. No substantial reason has been assigned, and clearly there is none, for assuming that Congress intended such an artificial and whimsical distinction. A strip of land 400 feet wide through the public domain was being withdrawn from private entry and dedicated as a right of way for a transcontinental railroad. The value of a right of way is dependent upon its continuity, and surely it could not have been contemplated that in case of reversion the government would get back only numerous disconnected fragments of that which it was granting as a continuous line. [214 F. at 924]

While recognizing that railroads could neither voluntarily nor involuntarily lose any interest in the § 2 right of way when such a loss would impair the construction or maintenance of a transcontinental railroad, the *Holland* court recognized that situations, such as we have here, would arise where ways of necessity would be required and allowed where they did not interfere with the purpose of the railroad grant:

> . . . it is reasonable to suppose that the grant was made with the implied consent that ways of necessity, both public and private, might be laid across the right of way at such places and under such conditions as would not unreasonably impair its usefulness for the purpose for which it was created. [214 F. at 926]

We view the key holding of *Townsend* and *Holland* to be that a grantee railroad, even though a portion of land be within a land grant section, cannot alienate any interest in the right of way which would impair the continuity of the transcontinental railroad. The entire concept of "limited fee" which was used in *Townsend* was designed to emphasize the reverter in-

terest which the United States retained.[3] Nothing in either the wording of the *Townsend* opinion[4] or the opinion's rationale would prevent a railroad from voluntarily conveying an interest within a right of way when such conveyance would not endanger the purpose of the grant.

That the *Townsend* rationale should not be construed more broadly than necessary was indicated by the Supreme Court in the *Union Pacific*[5] case when Justice Douglas wrote:

> The most that the "limited fee" cases decided was that the railroads received all surface rights to the right of way and all rights incident to a use for railroad purposes. [353 U.S. at 112, 77 S.Ct. at 689]

■ Thus, we believe, and are not dissuaded by any of the cases cited by defendant, that a railroad can convey those interests in the servient estate beneath the right of way which may be disposed of without interfering with the purpose of Congress. The railroad may therefore convey any interest it holds when the conveyance is not of (1) the surface of the right of way,[6] or (2) any other interest the conveyance of which would interfere with the operation of the railroad. The interest, in addition to the surface of the right of way, which the railroad cannot convey is adequately described in this passage from *Kansas City Southern Ry. Co. v. Arkansas Louisiana Gas Co.,* 476 F.2d 829, 834–835 (10th Cir. 1973):

> Of course, a railroad company which acquires a right of way over and through lands of another acquires more than the mere right of passage over such lands. It acquires the right to excavate drainage ditches; to construct beneath the surface supports for bridges and other structures; to erect and maintain telegraph lines and supporting poles with part of the poles beneath the surface; to construct passenger and freight depots, using portions of the land below them for foundations; to construct signals; to make fills and cuts to decrease the grades of their rail lines, and to use material from the land covered by the right of way to make such fills; and to construct a roadbed and lay its ties and rails thereon. Hence, it has substantial surface and subsurface rights, which it is entitled to have protected.

Perhaps the most important single holding of the *Southern Railway* case is contained in the sentence which followed the above-quoted portion:

> But in our opinion it [the railroad] cannot deprive the owner of the servient estate or those claiming through such owner from making use of the land in strata below the surface and below substrata

---

**3.** In Justice Frankfurter's dissenting opinion in *Union Pacific*, he defined the concept of "limited fee":

> This term has a settled meaning—it denotes present ownership that will continue so long as a stated contingency, leading to a reverter, does not occur. [353 U.S. at 130, 77 S.Ct. at 694]

**4.** We reject defendant's argument that *Townsend* forbids conveyance or loss by adverse possession of the servient estate beneath the right of way because the *Townsend* opinion repeatedly used the word "land" rather than "right of way." The Supreme Court did repeatedly use the word "land" when speaking of the interest *which the railroad received* by the right of way grant. However, when speaking of the interest *which the railroad could not convey or lose* by adverse possession because such conveyance or loss would be inconsistent with the purpose of the Congress in making the grant, the Supreme Court spoke only of "right of way" and did not mention the word "land."

**5.** *Union Pacific* apparently held that the government still owned oil and gas under railroad rights of way even after the government had issued a patent to the railroads. Although defendant stresses this point, we think the Supreme Court was only silently invalidating the patents to the extent that they apparently conveyed an interest which Congress had expressly reserved to the United States. This holding is not inconsistent with our view that the railroads could convey interests not reserved by the United States, and not inconsistent with the purposes of the grant.

**6.** In *Townsend* the Supreme Court held that Congress had decided that the surface of the right of way was necessary for the purposes of the railroad grant, and that no court could question the decision of Congress in this regard. [190 U.S. at 272, 23 S.Ct. at 673]

which are used or needed by the railroad company, and which in nowise, as in the instant case, interferes with the construction, maintenance and operation of the railroad. [476 F.2d at 835]

We conclude that the railroad *could*, consistent with all federal law, convey the servient estate beneath the right of way. We must, therefore, turn to state law and the specific wording of the conveyances in question, to determine whether the railroad *did* convey such an interest.

### What Interest Did Defendant Convey to the Predecessors in Interest of the Grantor's of Plaintiff's Easement?

Having concluded that defendant *could* have conveyed an interest in the subsurface of its right of way over the tracts in question, we turn to the question of the nature of the interest defendant did convey.

In our view, this question is governed by Kansas law. Defendant has strenuously objected to any discussion of state law in this case, arguing that since we are dealing with a federal land grant, federal law controls and overrides state law. We certainly agree that federal law must override state law in that state law must not be allowed to frustrate the purposes of federal law. For example, in *Townsend* the Supreme Court refused to allow state adverse possession law to frustrate the purposes of the federal railroad grant. State law indicated that the railroad's interest in the right of way did pass under adverse possession. But federal law overrode state law, and the Supreme Court held that the railroad's interest could not pass.

■ Thus, federal law will determine what sort of an interest the railroad received by the grant from Congress. In addition, federal law will determine what

sort of conveyances the railroad can make consistent with that grant. However, if federal law determines that the railroad has a certain interest and that the interest is conveyable, state law should govern the question of the nature of the interest that was, in fact, conveyed.[7] The *Townsend* opinion spoke to the applicability of state and federal law by quoting *Packer v. Bird,* 137 U.S. 661, 669, 11 S.Ct. 210, 212, 34 L.Ed. 819 (1891):

> The courts of the United States will construe the grants of the general government without reference to the rules of construction adopted by the States for their grants; but whatever incidents or rights attach to the ownership of property conveyed by the government will be determined by the States, subject to the condition that their rules do not impair the efficacy of the grants or the use and enjoyment of the property of the grantee.

Thus, we shall utilize the law of Kansas in determining what sort of an interest was conveyed by the defendant when it executed deeds to Boyer and Good. The deed to Boyer contained the following reservation:[8]

> Reserving to said company and its assigns a strip of land 400 feet wide to be used by the first party for a right of way and other railroad purposes where the road is now located upon the premises.

The deed to Good contained this reservation:

> Reserving to said Company, and its assigns, the right of way for said railway as now located on the premises four hundred feet in width, being two hundred feet on each side from the center of the track. . . . and provided also that said Company shall be exempt from all claims for damages to the possession and use of said land that may accrue to the party of

---

7. In connection with the issue of what law is applicable in deciding the various issues presented by this case, defendant greatly emphasizes two Kansas cases, *M. K. & T. Railway Co. v. Watson,* 74 Kan. 494, 87 Pac. 687 (1906), and *Union Pacific R.R. v. Davenport,* 102 Kan. 513, 170 P. 993 (1918). The cases are essentially just applications of the *Townsend* decision,

which we do not view as being inconsistent with our conclusions as to the applicable law.

8. We think it significant in terms of the interest conveyed by the railroad to Boyer and Good that these qualifications upon the fee granted appear to be reservations rather than exceptions.

the second part, or his assigns in the construction and operation of said railway.

■ In construing these reservations in an attempt to determine how much less than its total conveyable (under federal law) interest in the right of way the railroad sold, we must keep in mind that reservations are to be construed narrowly. *Barker v. Lashbrook,* 128 Kan. 595, 279 P. 12, 14 (1929). This is but an application of the principle that a deed will be strictly construed against the grantor in order that the grantee be conferred the greatest estate that the terms of the deed will permit. *Keller v. Ely,* 192 Kan. 698, 391 P.2d 132, 135 (1964). *See also Gotheridge v. Unified School District No. 365,* 212 Kan. 798, 512 P.2d 478, 482 (1973); *Fast v. Fast,* 209 Kan. 24, 27, 496 P.2d 171 (1972); *Fitzler v. Dumler,* 209 Kan. 16, 495 P.2d 1027, 1032 (1971); *Corbin v. Moser,* 195 Kan. 252, 403 P.2d 800, 805 (1965).

■ The reservation contained in the deed to Good clearly reserved a "right of way" for the railroad "as now located". Defendant argues that by this reservation, it reserved its *entire* interest *in the land* within the 400 foot right of way, and not just right of way easement. The general rule is clearly to the contrary. Similar wording in a grant to a railroad (which can be construed similarly to the wording in a reservation clause in a grant from a railroad) is generally construed to grant the railroad (or in this case reserve to the railroad) only a right of way easement. As noted in *Annot.,* 6 A.L.R.3d 973, 1013, § 8, (1966):

> The general principle [is] that a deed to a railroad company which conveys a "right" rather than a strip, piece, parcel, or tract of "land" (usually a right of way but occasionally the right or privilege of constructing, operating, or maintaining a railroad) must be construed as conveying an easement rather than a fee . . .

Among the cases following this general principle are federal cases *Lockwood v. Ohio River R. Co.,* 103 F. 243 (4th Cir. 1900), *cert. denied* 180 U.S. 637, 21 S.Ct.

920, 45 L.Ed. 710 (1901), and *South Penn Oil Co. v. Calf Creek Oil & Gas Co.,* 140 F. 507 (C.C.W.Va.1905). While no Kansas cases fall within this category, holdings in other Kansas cases clearly indicate that Kansas would follow this general principle.

■ Defendant can make a stronger argument in relation to the Boyer deed in which it reserved a *"strip of land* 400 feet wide to be used by the first party *for a right of way and for other* railroad purposes . . . ." (emphasis added) The fact that the reservation referred to a *strip of land,* rather than a right of way, lends support to an argument that the railroad reserved more than just an easement when it executed the deed to Good. However, because the purpose of the reservation is clearly set forth as being for a *right of way,* Kansas law dictates that the railroad reserved only an easement. *Harvest Queen Mill & Elevator Co. v. Sanders,* 189 Kan. 536, 370 P.2d 419 (1962); *Abercrombie v. Simmons,* 71 Kan. 538, 81 P. 208 (1905).

In *Queen Mill,* a railroad received a deed granting it a strip of "land" to be used "for the purpose of building or constructing its roadbed and railroad . . . or of maintaining its railroad." The Kansas Supreme Court held that the railroad obtained only an easement interest:

> In the instant case the 1887 deed and those things to which we may look in its interpretation plainly show that the strips were sold by the grantor and purchased by the grantee railway company as and for a right-of-way for a railroad. This use being within the contemplation of the parties, it is to be considered as an element in the contract and limits the interest that the railroad acquired, i. e., an easement for railroad purposes.
>
> We have held that when land is devoted to railroad purposes it is immaterial whether the railway company acquired it by virtue of an easement, by condemnation, right-of-way deed, or other conveyance. If or when it ceases to be used for railway purposes, the land concerned returns to its prior status as an integral

part of the freehold to which it belonged prior to its subjection to use for railway purposes. (*Federal Farm Mortgage Corp. v. Smith,* 149 Kan. 789, 792, 89 P.2d 838). This court has uniformly held that railroads do not own fee titles to narrow strips taken as right-of-way, regardless of whether they are taken by condemnation or right-of-way deed. The rule is in conformity with this state's long-standing public policy and gives full effect to the intent of the parties who execute right-of-way deeds rather than going through lengthy and expensive condemnation proceedings. (*Abercrombie v. Simmons,* supra; *Bowers v. Atchison, T. & S. F. Rly. Co.,* 119 Kan. 202, 237 P. 913, 42 A.L.R. 228; *Disney v. Long,* 90 Kan. 309, 313, 133 P. 572).

In *Midland Valley R. Co. v. Corn,* 10 Cir., 21 F.2d 96, 98, it was held that land acquired by a railroad company, whether by purchase or compulsory proceedings, shall be held and used for such grant only and where it was conveyed for right-of-way purposes it was limited to that use. The railroad, of course, is entitled to the exclusive use of the right-of-way while it is used for railroad purposes, but any right not inconsistent with the easement remains in the abutting owner. It must therefore be inferred that the legislature did not intend to confer upon the railroad the power to acquire title to any greater interest in land either by condemnation or by deed than was necessary for right-of-way purposes.

Generally a railroad company in acquiring land for railroad right-of-way, whether it be by grant or condemnation proceedings, is held to take not the fee, but only a special interest therein, usually termed an "easement," which special interest or title is taken for railroad purposes, that is, public purposes, so that the railroad has no right to take from such right-of-way any underlying minerals and appropriate them to its own use or convey them to others. Where a railroad merely acquires an easement of way the title to the underlying minerals found or existing within the limits of the right-of-way and below the grade of the road remain in the owner of the fee who might mine for them so long as he does not interfere with the operation of the railroad nor imperil the surface support. (*Harvey v. Missouri Pac. Railroad Co.,* 111 Kan. 371, 372, 373, 207 P. 761, 50 A.L.R. 300; *Missouri, K. & N. W. R. Co. v. Schmuck,* 69 Kan. 272, 76 P. 836; *Abercrombie v. Simmons,* supra; Anno. 21 A.L.R. 1139.) [370 P.2d at 423–424]

*See also In re Chicago & N.W.R. Co.,* 127 F.2d 1001 (7th Cir.), *cert. denied,* 317 U.S. 659, 63 S.Ct. 59, 87 L.Ed. 530, *reh. denied,* 317 U.S. 708, 63 S.Ct. 155, 87 L.Ed. 564 (1942); *Faus v. Los Angeles,* 195 Cal.App.2d 134, 15 Cal.Rptr. 783 (1961); *Daugherty v. Helena & Northwestern Railway,* 221 Ark. 101, 252 S.W.2d 546 (1952); *Keokuk County v. Renier,* 227 Iowa 499, 288 N.W. 676 (1939); *Gaston v. Gainesville & D. Electric R. Co.,* 120 Ga. 516, 48 S.E. 188 (1904); *Fitchburg R. Co. v. Frost,* 147 Mass. 118, 16 N.E. 773 (1888).

Another Kansas case which is helpful is *Barker v. Lashbrook, supra,* in which the warranty deed contained the following description:

Less one acre in southeast corner for school purposes and 3.81 acres taken by the Kansas City, Wyandotte & Northwestern Railway, containing 117.19 acres, more or less.

The Court found no reservation in the grantor of an interest in the railroad right of way. When the right of way was abandoned, it reverted to the grantee:

A reservation is always construed more strictly than a grant (18 C.J. 344), and it is difficult to conclude that businesslike people, able to own, sell, and buy land, could reasonably have had in mind, at the time of the sale and purchase, the leaving of a long, narrow strip of land through the 120-acre tract that was to remain the absolute property of the grantor in the happening of a very possible contingency. In the *Bowers* case, above cited, this is spoken of as being so absurd and unreasonable as to even be against public policy:

"The deed was to be interpreted most favorably to the grantee. The probability that the grantor would purposely deprive his grantee of the benefit of the servient soil, and reserve what in the great majority of instances would be of no use to the grantor, was always slight. Experience revealed that separate ownership of long, narrow strips of land distinct from the territory adjoining on each side was prolific of private dispute and public disturbance, and public policy became an important factor in the interpretation. Therefore it became settled doctrine that a deed of land abutting on a road passes a moiety of the road, unless intention not to do so be clearly indicated." 119 Kan. 204, 205, 237 P. 914. [279 P. at 14]

Similarly, Kansas public policy mitigates against an interpretation of the reservation clauses which would hold that the grantor railroad (defendant) reserved an interest in the servient estate beneath the right of way for which it would have no use.[9]

The *Barker v. Lashbrook* opinion relied heavily upon a Kansas statute which is now K.S.A. 58–2202, which provides:

The term "heirs," or other words of inheritance, shall not be necessary to create or convey an estate in fee simple; and *every conveyance of real estate shall pass all the estate of the grantor therein, unless the intent to pass a less estate shall expressly appear or be necessarily implied in the terms of the grant.* (emphasis added)

Additionally, Kansas law, as expressed in *Carpenter v. Fager,* 188 Kan. 234, 361 P.2d 861, 863 (1961) indicates that a sale of land abutting the right of way by the railroad gives the grantee the same interest in the servient estate under the right of way that the railroad had:

A conveyance by a grantor of a parcel of ground abutting an easement without a clear reservation of any right to the servient estate grants, in addition to the parcel, all rights which the grantor may have by reason of such easement, even though the metes and bounds description in the conveyance extends only to the boundary of the easement. In other words, a conveyance of land abutting an easement gives the grantee the same right of ownership to the easement as the grantor had, unless the grantor makes his purpose to exclude clear by express declaration, or equivalent to express declaration, in the instrument. *Bowers v. Atchison, T. & S.F. Ry. Co.,* supra; *Greenberg v. L.I. Snodgrass Co.,* 161 Ohio St. 351, 119 N.E.2d 292, 49 A.L.R.2d 974.

In *United States v. Magnolia Petroleum Co.,* 10 Cir., 110 F.2d 212, 217, 218, it was stated:

"It is the general rule that the servient estate in a strip of land set apart for a railroad or highway right-of-way, or for a street, or a small area set apart for school, church, *or other public purpose,* passes with a conveyance of the fee to the abutting legal subdivision or tract out of which the strip or small area was carved even though no express provision to that effect is contained in the instrument of conveyance, * * * [cites omitted]

A Tenth Circuit case, *Chickasha Cotton Oil Company v. Town of Mayville, Oklahoma,* 249 F.2d 542, 544 (10th Cir. 1957), expresses the same rule:

It is the general common law rule—recognized by this court—that the servient estate in a strip of land set apart for railroad right-of-way, highway, or other comparable public purpose, passes with a conveyance of the fee to the abutting legal subdivision or tract out of which the right-of-way or other strip was carved even though no express provision to that effect is contained in the conveyance;

---

9. Defendant argues that the Kansas public policy against "strips and gores" does not operate here, because there is no public policy against the federal government owning the servient estate beneath a railroad right of way. However, as we have indicated, we are convinced that the railroad, not the federal government held the servient estate pursuant to the § 2 and § 3 grants of the 1862 Act. Given that conclusion, the Kansas policy considerations expressed in *Barker v. Lashbrook* are fully applicable.

and that on the abandonment of the strip for the purpose for which it was set apart, the dominant estate becomes extinguished and the entire title and estate vests in the owner of such abutting legal subdivision or tract. *United States v. Magnolia Petroleum Co.,* 10 Cir., 110 F.2d 212; *United States v. Drumb,* 10 Cir., 152 F.2d 821; *Seminole Nation v. White,* 10 Cir., 224 F.2d 173, certiorari denied 350 U.S. 895, 76 S.Ct. 153, 100 L.Ed. 787.

We believe that the rules of law just expressed clearly indicate that under Kansas law the defendant passed its entire interest in the tracts in question, except that portion of the right of way consisting of the surface interest and such other interests as are necessary for the proper maintenance of the railroad. We hold that defendant conveyed to Boyer and Good the servient estate beneath the railroad right of way, except to the extent that such conveyance would interfere with the operation of the railroad.[10]

As indicated above, nothing in the federal law would prevent state law from mandating such a conclusion. Nothing in the federal law says that a railroad cannot convey all its interests in a right of way other than the surface and such other rights incident to railroad use. To hold otherwise would be to extend the ruling in *Townsend* beyond that opinion's wording, and beyond its rationale. Federal law says that defendant *could* convey the servient estate beneath the right of way. Kansas law holds that defendant did convey that interest in our two situations. The present holders of the servient estate have granted plaintiff a pipeline right of way easement beneath the railroad right of way. So long as the pipeline does not interfere with the railroad, it is not inconsistent with federal law and is perfectly proper in all respects.

The conclusion we reach is certainly consistent with the general policies of Kansas property law. In addition, it is not inconsistent with federal laws designed to promote the transcontinental railroads, for nothing in this opinion should allow any activity which would adversely affect the operation or maintenance of the defendant railroad.

In addition, the conclusion we reach is consistent with the strong public policy involved in promotion of transportation systems of all types. The Tenth Circuit has noted in *Himonas v. Denver & R.G.W.R. Co.,* 179 F.2d 171, 173 (10th Cir. 1949):

> But in making such grant, Congress did not intend to impose a barrier that could not be crossed between areas lying on opposite sides of the right of way. *The purpose of the grant was to encourage, not impede, the development of the areas along the right of way.* (emphasis added).

*See also Kansas City Southern Ry. Co. v. Arkansas Louisiana Gas Co., supra,* 476 F.2d at 835; *ETSI v. U. PAC., supra,* 435 F.Supp. at 318; *Central Pac. Ry. Co. v. Alameda County,* 212 Cal. 348, 299 P. 75, 79 (1931). Even the *Townsend* and *Holland* decisions, as we have earlier noted, recognized the clear necessity for passage across railroad rights of way.

10. In light of our holding, we need not address plaintiff's argument on patents. After the conveyances to which we refer, the government issued certain patents to the defendant for the lands in question. The patents' effect should have been to transfer the interest of the United States to the then-owner of the land, the grantees of defendant. *Monroe Cattle Company v. Becker,* 147 U.S. 47, 13 S.Ct. 217, 37 L.Ed. 72 (1893). The effect of the patent would have been to convey any interests the United States had in the tracts in question. 73 C.J.S. *Public Lands* § 196, p. 854 (1951). As we have indicated above, we believe that the United States had already, via § 2 and § 3 of the 1862 Act, conveyed its entire interest to the railroad, excepting only those interests which Congress had expressly reserved and therefore could not be effectively conveyed by patent. Therefore, we do not view the patents as having had any important practical effect.

If, for some reason, the United States still had some interest in the servient estate at the time of the patents, that interest would have transferred to defendant's grantees. The mere fact that the patents could not effectively convey those interests which Congress had expressly reserved (reverter interest and mineral lands) in no way indicates that the patents would not have been effective to convey the remainder of the United States' interest.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment be granted.

IT IS FURTHER ORDERED that defendant's motion for summary judgment be denied.

IT IS FURTHER ORDERED that the defendant, its successors and assigns, by way of its right of way easement and within that easement has the exclusive right to the use of said right of way for the construction, operation and maintenance of its railroad facilities. Subject to said prior right, the plaintiff, Energy Transportation Systems, Inc., a pipeline company, its successors and assigns, by way of its right of way easement and within that easement, has the exclusive right to the use of said right of way for the construction, operation and maintenance of its pipelines, so long as said use does not interfere with the construction, operation and maintenance of said railroad, its successors or assigns.

IT IS FURTHER ORDERED that plaintiff, Energy Transportation Systems, Inc., that should it ever develop in the future that said pipeline company, its successors and assigns, by the use of its easement interferes with the construction, operation or maintenance of the defendant railroad, its successors or assigns, plaintiff, Energy Transportation Systems, Inc., pipeline company, its successors and assigns forthwith take whatever steps are necessary to correct such deficiency, will relocate its facilities at its own expense and said railroad will use its best efforts to provide such alternate rights of way within the tracts described above as may be required for plaintiff's relocation.

IT IS SO ORDERED.